1

**Michael S. Riley**
**(Admitted Pro Hac Vice)**
242 Algiers Avenue
Fort Lauderdale, Florida 33308
Tel:  (954) 401-3757
Email: mriley8@aol.com

2

3

FILED

APR - 3 2013

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

4

Special Counsel for Allana Baroni
Chapter 11 Debtor and Debtor In Possession

5

6
## UNITED STATES BANKRUPTCY COURT

7
## CENTRAL DISTRICT OF CALIFORNIA

8
## SAN FERNANDO VALLEY DIVISION

9

10
In re

11
ALLANA BARONI

12
Debtor and Debtor in Possession

13

14
ALLANA BARONI,

15
Plaintiff,

16
v.

17
GREEN TREE SERVICING, LLC,

18
Defendant.

19

20

21

Case No.: 1:12-BK-10986-AA

Chapter 11

Adv. No.: _____

**COMPLAINT TO:**
   **(1) DETERMINE THE VALIDITY**
       **OF CLAIMANT'S LIEN;**

   **(2) FOR DECLARATORY**
       **JUDGMENT DISALLOWING IN**
       **ITS ENTIREITY CLAIM NO. 4-2**
       **(AND AMENDMENTS**
       **THERETO), FILED BY GREEN**
       **TREE SERVICING, LLC**

22
   ALLANA BARONI, debtor and debtor in possession and plaintiff, ("Plaintiff " or

23
"Debtor") complains (the "Complaint") and alleges against, GREEN TREE SERVICING, LLC,

24
("Defendant" or "Claimant" or "Green Tree"), as follows:

25
///

26
///

27

1

**PARTIES**

1.       Baroni is an individual residing in the County of Los Angeles, State of California.

2.       On February 1, 2012, Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code ("Code"). On February 29, 2012, the case was converted to Chapter 11. The Debtor continues to manage her financial affairs as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108, assigned case number 1:12-BK-10986-AA (the "Case").

3.       Plaintiff is informed and believes that Defendant is an entity doing business in the state of California.

4.       Defendant has filed a proof of claim in Debtor's Case, in which it asserts a secured claim in the amount of $135,395.60 (the "Claim"), which is purportedly secured by real property located at 2240 Village Walk Drive, Unit 2311, Henderson, Nevada.

5.       Defendant purports to be the holder of that certain deed of trust, recorded as instrument number 20050526-0003503 on May 26, 2005 in the County of Clark, Nevada ("Security Interest").

**JURISDICTION AND VENUE**

6.       This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that it arises in or is related to the above-captioned case under Chapter 11 of the United States Bankruptcy Code.

7.       The above-captioned Chapter 11 Case is currently pending before the Honorable Alan Ahart of the Bankruptcy Court for the Central District of California.

8.       This action is a "core proceeding" under 28 U.S.C. § 157(b)(2).

9.       Venue of this action is proper under 28 U.S.C. § 1408 and 1409, in that it arises in or relates to the Case under Chapter 11 of the United States Bankruptcy Code, which is presently pending in the Central District of California.

///

///

2

2210.001

## GENERAL ALLEGATIONS

10.    On May 19, 2005 Debtor executed a Home Equity Credit Line Agreement and Deed of Trust in the amount of $134,998.00. Countrywide Home Loans, Inc. is identified as the Lender on both documents. Mortgage Electronic Registration Systems, Inc., "MERS" acting solely as a nominee for the Lender is named as the Beneficiary.

11.    The proof of claim filed by Claimant, Green Tree, fails to attach sufficient competent evidence showing that Claimant holds the Security Interest, as described herein. A true and correct copy of the proof of claim is attached hereto as **Exhibit A.**

12.    The Debtor disputes that the Claimant, Green Tree is the holder in due course of the Home Equity Line of Credit ("HELOC") or the beneficiary under the Deed of Trust ("DOT"), and is therefore with without standing to file a proof of claim. Claimant has no interest or rights as to the Baroni Home Equity Line of Credit

13.    The Claimant provided two documents to establish their standing as the creditor. The Home Equity Line of Credit "HELOC" Agreement dated May 19, 2005 which, Claimant has identified as the Note, and a Deed of Trust also dated May 19, 2005. The HELOC identifies the parties to the transaction as Countrywide Home Loans, Inc. and Allana and James Baroni. Green Tree Servicing, LLC is not identified anywhere on the agreement. The Deed of Trust identifies Countrywide Home Loans, Inc. as the "Lender" with Mortgage Electronic Registration Systems, Inc. " MERS" as the "Beneficiary" acting solely as the nominee for the Lender. The Claimant has not provided an endorsement of the HELOC, nor an assignment of the Deed of Trust, nor any other documentation evidencing that they are the current beneficiary.

///

///

///

///

///

3

14.    As set forth below, the documentation provided to the Debtor from the Claimant

pursuant to FRBP 2004, indicates that the Debtor's HELOC was pledged to CWHEQ Revolving

Home Equity Loan Trust, Series 2005-D ("CWHEQ"), an asset backed security:

a. June 17, 2010 letter of debt validation from Green Tree, attached hereto as

**(Exhibit "B")**, the Claimant identified the "Creditor" as:


"THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS
SUCCESSOR TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWHEQ REVOLVNG HOME EQUITY LOAN TRUST,
SERIES 2005-D."


15.    The CWHEQ SEC filings show that the security was formed pursuant to a Sale

and Servicing Agreement dated August 30, 2005, attached hereto as **(Exhibit "C")**. The parties

to the Agreement are, CWHEQ, Inc., (a wholly owned subsidiary of Countrywide Financial

Corporation) as Depositor, Countrywide Home Loans, Inc. as Master Servicer and Sponsor,

JPMorgan Chase Bank, N.A. as Trustee, and the trust CWHEQ 2005-D.   It's relevant to note that

in 2006, JPMorgan Chase sold its corporate trust department to The Bank of New York, who was

then identified as the Trustee for CWHEQ. As set forth below, page 3 of the agreement specifies

that CWHEQ, Inc., was to transfer the loans to the Owner Trustee on behalf of the trust:

Article II Conveyance of Mortgage Loans; Tax Treatment


(a) Concurrently with the execution and delivery of this Agreement, the
Depositor hereby transfers to the Trust without recourse (subject to Sections
2.02 and 2.04) all of its right, title, and interest in

(i) each Mortgage Loan, including its Asset Balance (including all
Additional Balances), the related Mortgage File, all property that
secures the Mortgage Loan, and all collections received on it after the
Cut-off Date (excluding payments due by the Cut-off Date);  .........


This transfer to the Trust is to the Owner Trustee, on behalf of the Trust,
and each reference in this Agreement to this transfer shall be construed
accordingly.

4

1    16.    To evidence the transfer to the Trust, Article II, Conveyance of Mortgage Loans,

2    Tax Treatment,  page 5, section (z) of the agreement states that the loan is to be registered in the

3    name of the Trustee in MERS:

4

5          (z) cause the MERS(R) System to indicate (and provide evidence to
            the Indenture Trustee that it has done so) that the Mortgage Loans have
6          been assigned by the Trust to the Indenture Trustee in accordance with
            this Agreement for the benefit of the Noteholders and the Credit Enhancer
7          by including (or deleting, in the case of Mortgage Loans that are
            repurchased in accordance with this Agreement) in the MERS computer files.....
8

9    17.    Accordingly, the Debtor's HELOC was registered in the MERS system along with

10   the "Investor" who was registered as The Bank of New York Mellon. Using the Mortgage

11   Identification Number "MIN," on the DOT #1001337-0000626254-0, a reading of the MERS

12   data base on April 1, 2013 is attached hereto as **(Exhibit "D")** which, identifies the investor of

13   the debt as The Bank of New York Mellon as Trustee.  Despite a request to Claimant to provide

14   all documents relevant to MERS, and despite the fact that MERS is identified as the Beneficiary

15   on the DOT, Claimant provided no MERS documents in response to Debtor's FRBP 2004

16   request.

17   18.    If in fact, as the evidence would indicate, the "Holder" of the HELOC is

18   CWHEQ with Bank of New York Mellon as Trustee, it is required that the Claimant must

19   establish its standing by a chain of ownership. In *In re Hayes*, 393 B.R. 259 (Bankr. D. Mass.,

20   2008) the court noted that both it and the debtor are entitled to insist that the moving party

21   establish its standing in a motion from relief from stay through the submission of an accurate

22   history of the claim of the mortgage. Absent such proof, relief from the stay is unwarranted and a

23   proof of claim filed by the moving party, to which an objection is filed, must be disallowed, *Id* at

24   269.

25   ///

26   ///

27

5

ADVERSARY COMPLAINT

1        19.       In Part 1 of Claimant's proof of claim, the Claimant wrote $135,395.60 as

2 the total principal and interest due. However, the accounting produced in response to Debtor's

3 request for discovery under FRBP 2004 attached hereto as **Exhibit "E,"** identifies "New Loan

4 Setup" in the amount of $82,590.14 and also identifies the "Charge-Off" amount as $86,096.49

5 on May 5, 2009. There are no more accounting entries after May 5, 2009. However, Part 3 of the

6 Claim under Statement of Amount Necessary to Cure Default, Claimant wrote that the last

7 payment received by creditor was on February 25, 2011. This payment is not reflected on the

8 produced accounting.

9        20.     In addition, to submitting an inaccurate accounting of the debt, the Claimant has

10 not proved that it is the "Holder" of the HELOC with standing to bring a claim, nor has the

11 Claimant proved they have any rights to the Deed of Trust.  This is not a technical requirement

12 since the Debtor could be exposed to "the danger that multiple holders would seek foreclosure

13 [and money judgment] based upon the same note and mortgage." *Washington Mut. Bank. F.A. v.*

14 *Green*, 156 Ohio App. 3d 461 (2004).

15        21.     Based on the absence of any evidence attached to Claimant's proof of claim or

16 obtained through Debtors FRBP 2004 subpoena,  Green Tree Servicing, LLC has not proved it is

17 a holder of the HELOC or the beneficiary of the DOT, and is without standing to file a proof of

18 claim.

19        22.     A claimant filing a proof of claim must attach copies of writings upon which

20 claims are based in order to carry its burden of establishing a *prima facie* case against the

21 debtor. *Hardin v. Gianni (In re King Investments Inc.),* 219 B.R. 848, 858 (B.A.P. 9th Cir.

22 1998). Further, a claim should not be allowed if that claim is unenforceable against the debtor

23 and property of the debtor, under any agreement or applicable law. 11 U.S.C. § 502 (b)(1). In

24 addition, Bankruptcy Rule 3001(c) provides that "[w]hen a claim, or an interest in property of

25 the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed

26 with the proof of claim." If the writing has been lost or destroyed, "a statement of the

27 circumstances of the loss or destruction shall be filed with the claim." *Id.* Bankruptcy Rule

6

1    3001(d) further provides, "[i]f a security interest in property of the debtor is claimed, the proof

2    of claim shall be accompanied by evidence that the security interest has been perfected."

3    Official Form 10, as prescribed by the Judicial Conference of the United States, also requires a

4    creditor to attach supporting documentation to the proof of claim. "[T]he documentation

5    required by Bankruptcy Rule 3001 and Official Form 10 allows the debtor . . . to have enough

6    information to fully determine whether or not a valid claim in the proper amount has been

7    filed." *In re Armstrong*, 320 B.R. 97, 104 (N.D. Tex. 2005). BNY has failed to meet this

8    burden.  Claimant has not satisfied the burden of proof.

9        23.    Plaintiff reserves all rights, consistent with the local rules of this district, oders of

10   the Court, and any applicable law, to amend, modify and/or supplement this Complaint.

11   Therefore, Plaintiff may raise additional objections to the Claim.

12

13                        **FIRST CLAIM FOR RELIEF**

14            **(For a Judgment Disallowing the Claim in its Entirety)**

15       24.    Plaintiff re-alleges and incorporates by this reference each and every allegation

16   set forth above, inclusive, as though fully set forth herein.

17       25.    Plaintiff is entitled to an order and judgment determining that the Claim is

18   disallowed in its entirety.

19                        **SECOND CLAIM FOR RELIEF**

20            **(For a Judgment Avoiding the Security Interest)**

21       26.    Plaintiff re-alleges and incorporates by this reference each and every allegation

22   set forth above, inclusive, as though fully set forth herein.

23       27.    Plaintiff is entitled to an order and judgment avoiding the Security Interest.

24                        **THIRD CLAIM FOR RELIEF**

25                   **(Restitution/Unjust Enrichment)**

26       28.    Plaintiff re-alleges and incorporates by this reference each and every allegation

27   set forth above, inclusive, as though fully set forth herein.

2210.001
ADVERSARY COMPLAINT

29.    Plaintiff is informed and believes that Defendant received payment from or on behalf of Debtor on account of the Claim in an amount to be determined at trial. To the extent Defendant received payments from or on behalf of Debtor on account of the Claim, Defendant received a benefit and unjustly retained the benefit at the expense of another; and therefore was unjustly enriched thereby.

**WHEREFORE,** Plaintiff prays that this Court enter judgment against Defendant as follows:

    a.  For a determination and judgment disallowing the entirety of Defendant's Claim and any amendments thereto;

    b.  For a determination and judgment avoiding the Security Interest;

    c.  For the recovery of all sums paid by Debtor to Defendant on account of Defendant's purported claim;

    d.  For reasonable attorneys' fees and  costs of suit; and

    e.  For such other and further relief as this Court deems just and proper.

April 2, 2013

MICHAEL S. RILEY

Michael S. Riley
Special Counsel for Debtor and Debtor in
Possession, Allana Baroni

8

2210.001

ADVERSARY COMPLAINT

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT   Central   DISTRICT OF California | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Allana Baroni | Case Number: 1:12-bk-10986-AA |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Green Tree Servicing, LLC

Name and address where notices should be sent:
Green Tree Servicing, LLC
7360 South Kyrene Road
Tempe, AZ 85283

Telephone number: (877) 256-4871     email:

Name and address where payment should be sent (if different from above):
Green Tree Servicing
345 St. Peter St. L800R
St. Paul, MN 55102

Telephone number: (877) 256-4871     email:

**COURT USE ONLY**

☑ Check this box if this claim amends a previously filed claim.

Court Claim Number: 4-1
  (If known)

Filed on: 03/30/12

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $ 135,395.60

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Note Dated
  (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** 6016     ( G.114-168 ) | **3a. Debtor may have scheduled account as:** coutrywide/BofA (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** _____ (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: 2240 Village Walk Drive, Unit 2311, Henderson, Nevada 89052

Value of Property: $ _____

Annual Interest Rate_____% ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ 4,274.82

Basis for perfection: Note and Deed of Trust

Amount of Secured Claim: $ 135,395.60

Amount Unsecured: $ _____

*Proof of Claim being amended to included all correct and perfected Loan Documents.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use  11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units 11 U.S.C. § 507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/12)

2

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

8. **Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: **Cassandra J. Richey**
Title: Attorney
Company: Prober & Raphael, A Law Corporation
Address and telephone number (if different from notice address above):
P.O. Box 4365
Woodland Hills, CA 91365-4365

*(signature)*  2/2/2013
(Date)

Telephone number: (818) 227-0100  email: cmartin@pralc.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/12)

3

_____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

_____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

B 10 (Attachment A) (12/11)

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Allana Baroni | Case number: | 1:12-bk-10986-AA |
| Name of creditor: | Green Tree Servicing, LLC | Last four digits of any number you use to identify the debtor's account: | 6016 |

### PLEASE BE ADVISED CREDITOR IS THE HOLDER OF THE NOTE AND ENTITLED TO ENFORCE.

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due          (1) $ 135,395.60

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| _____ % | _____ | _____ | $ _____ |
| _____ % | _____ | _____ | $ _____ |
| _____ % | _____ | _____ | + $ _____ |

Total interest due as of the petition date    $ ____0.00    Copy total here ▶ (2) + $ ____0.00

3. Total principal and interest due        (3) $ 135,395.60

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | _____ | (1) | $ _____ |
| 2. Non-sufficient funds (NSF) fees | _____ | (2) | $ _____ |
| 3. Attorney's fees | _____ | (3) | $ _____ |
| 4. Filing fees and court costs | _____ | (4) | $ _____ |
| 5. Advertisement costs | _____ | (5) | $ _____ |
| 6. Sheriff/auctioneer fees | _____ | (6) | $ _____ |
| 7. Title costs | _____ | (7) | $ _____ |
| 8. Recording fees | _____ | (8) | $ _____ |
| 9. Appraisal/broker's price opinion fees | _____ | (9) | $ _____ |
| 10. Property inspection fees | _____ | (10) | $ _____ |
| 11. Tax advances (non-escrow) | _____ | (11) | $ _____ |
| 12. Insurance advances (non-escrow) | _____ | (12) | $ _____ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | _____ | (13) | $ _____ |
| 14. Property preservation expenses. Specify:_____ | _____ | (14) | $ _____ |
| 15. Other. Specify:_____ | _____ | (15) | $ _____ |
| 16. Other. Specify:_____ | _____ | (16) | $ _____ |
| 17. Other. Specify:_____ | _____ | (17) + | $ _____ |

18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. (18) $ 0.00

B 10 (Attachment A) (12/11)                                                    Page 2

---

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

❑   No

❑   Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with
     applicable nonbankruptcy law.

1.  **Installment payments
    due**              Date last payment received by creditor        02/25/2011

                       Number of installment payments due      (1)      11

2.  **Amount of installment
    payments due**     _____installments @              $ _____

                       _____installments @              $ _____

                       _____installments @            + $ _____

                       **Total installment payments due as of
                       the petition date**                 $    4,274.82       Copy total here ▶  (2) $    4,274.82

3.  **Calculation of cure
    amount**            **Add** total prepetition fees, expenses, and charges    Copy total from
                                                                                  Part 2 here ▶    + $        0.00

                        **Subtract** total of unapplied funds (funds received but not credited
                        to account)                                               - $ _____

                        **Subtract** amounts for which debtor is entitled to a refund    - $ _____

                        **Total amount necessary to cure default as of the petition date**   (3) $    4,274.82

                                                                                  Copy total onto Item 4
                                                                                  of Proof of Claim form

# SPECIAL NOTICE

## THE FOLLOWING NOTICE IS GIVEN TO YOU IN THE EVENT THAT THE FEDERAL FAIR DEBT COLLECTIONS ACT APPLIES TO THIS COMMUNICATION.

The following statement provides you with notice of certain rights which you may have by law. Nothing in this statement modifies or changes the hearing date or response time specified in the attached documents or your need to take legal action to protect your rights in this matter. No provision of the following statement modifies or removes your need to comply with local rules concerning the attached documents.

## CONSUMER DISCLOSURE

This communication is made in an attempt to collect on a debt or judgment and any information obtained will be used for that purpose. Please be advised that if you notify Prober and Raphael within 30 days that all or a part of your obligation or judgment is disputed, then Prober and Raphael will mail to you a written verification of the obligations or judgment and the amounts owed to Green Tree Servicing, LLC

In addition and upon your request within 30 days, you will be provided with the name and address of the original creditor, if different from the current creditor.

Prepared by: CONNIE R. BROWN                              **COUNTRYWIDE HOME LOANS, INC.**

DATE:       05/19/2005    THIS IS CERTIFIED TO BE A TRUE AND    Branch #: REDACTED
BORROWER: ALLANA A. BAE   CORRECT COPY OF THE ORIGINAL.       2850 W.HORIZON RIDGE PKWY.#100
CASE #:                   NEVADA TITLE COMPANY               HENDERSON, NV 89052-3901
LOAN #:    REDACTED       BY:                                Phone: (702)434-7644
PROPERTY ADDRESS: 2240 VILLAGE WALK DR UNIT 2311             Br Fax No.: (702)434-7536
                  HENDERSON, NV 89052-7800

## HOME EQUITY CREDIT LINE AGREEMENT AND
## DISCLOSURE STATEMENT

Date: MAY 19, 2005

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement.. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 4 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 11.B, 11.D, 12.B or 15.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase or initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) paying closing costs and finance charges in accordance with paragraph 7.C below; (iii) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (v) any other method or procedure you establish.

**3. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, subject to an Account Termination Fee or Low Balance Fee FINANCE CHARGE, as applicable, as described in paragraphs 7.D and 6.B(6), respectively. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date," any periodic

CONV
● HELOC - NV Agreement & Disclosure
2C528-NV (09/04)(d)                          Page 1 of 9                          Initials: [handwritten]





REDACTED                                                     REDACTED

LOAN #: REDACTED

finance charge incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a check to pay all or any part of my New Balance, I understand that:

(1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My check will not be honored if I do not have sufficient availability on my Account.
(2) If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.
(3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.
(4) You may not use a Check to make a payment once the Draw Period ends. That is, a Check may not be used to make a payment during the Repayment Period.

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 12.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**4. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 134,998.00      . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**5. ANNUAL PERCENTAGE RATE.**
☐ A. The initial Daily Periodic Rate is      N/A %. The initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 5.C below had been used, in which event the initial Daily Periodic Rate would be      N/A % and the initial **ANNUAL PERCENTAGE RATE** would be      N/A %. These discounted rates will be in effect from the date of this Agreement until N/A      . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 5.C below.

☒ B. The initial Daily Periodic Rate is 0.02911 % and the initial **ANNUAL PERCENTAGE RATE** is 10.625 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" is the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 5.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 5.C above to determine my **ANNUAL PERCENTAGE RATE** is 4.625 percentage points.



LOAN #:REDACTED

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above    18.000 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**6. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(2) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other **FINANCE CHARGES.**

(1) Points **FINANCE CHARGE.**

I agree to pay a Points **FINANCE CHARGE** of $ 0 . 00          at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

(2) Broker Fee **FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $N/A          at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

(3) Settlement Agent **FINANCE CHARGES.**

I agree to pay the following Settlement Agent **FINANCE CHARGES** at the time I sign this Agreement.

Sub Escrow/Full Escrow

$ _____
$ _____
$ _____
$ _____
$ _____

(4) Miscellaneous **FINANCE CHARGES.**

I agree to pay the following miscellaneous **FINANCE CHARGES** at the time I sign this Agreement:

$ _____
$ _____
$ _____
$ _____



LOAN #:REDACTED

**(5) Annual Maintenance Fee FINANCE CHARGE.**

☐   I agree to pay an annual maintenance fee **FINANCE CHARGE** of $                     which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $                     from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

☒   I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

**(6) Low Balance Fee FINANCE CHARGE.**

☐   In consideration of having an Account with a reduced Margin, I agree to maintain an Average Daily Balance of $40,000 in each monthly billing cycle during the first two years of my Account. I further agree to pay a Low Balance Fee **FINANCE CHARGE** of $40 for each monthly billing cycle during the first two years of my Account in which I fail to maintain an Average Daily Balance of $40,000. You will not charge me this fee for the month in which you charge me an Account Termination Fee pursuant to the terms of paragraph 7.D.

**7. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within ten (10) days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment or $5.00, whichever is greater.

(2) For each Equity Credit Line Check written for less than $250 which you honor, I agree to pay a Processing Fee of $5.

(3) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Title Insurance | $           30.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $           0.00 |
| Total Paid by Borrower | $           30.00 |

C. I may elect to pay the closing costs described in paragraph 7.B above and the finance charges described in paragraph 6.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. ☒ I agree to pay an Account Termination Fee of $ 350.00                     , to cover your costs of processing and administering my Account if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien on or before the fifth (5th)              anniversary of this Agreement.

☐ I will not be charged an Account Termination Fee on this loan.

CONV
● HELOC - NV Agreement & Disclosure
2CS26-NV (09/04)                                                     Page 4 of 9                                     Initials: APS

**LOAN #:** REDACTED

**8. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Deed of Trust (the "Deed of Trust") covering my dwelling located at
2240 VILLAGE WALK DR UNIT 2311, HENDERSON, NV 89052-7800
(the "Real Property"). The Deed of Trust is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**9. SECTION INTENTIONALLY OMITTED.**

**10. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Deed of Trust or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**11. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

   A. You may take the actions listed in paragraph 11.B below during the period that any of the following events or conditions occur:

   (1)   the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

   (2)   you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

   (3)   I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 13 below;

   (4)   government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

   (5)   government action (such as imposition of a tax lien) impairs the priority of the lien of the Deed of Trust such that the value of the lien of the Deed of Trust is less than 120% of my Credit Limit;

   (6)   the maximum Annual Percentage Rate set forth in paragraph 5.E above is reached.

   (7)   The creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

   B. During the period in which a condition described in paragraph 11.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A above or 12.A below have occurred.

   C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Deed of Trust is not impaired.

   D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 11.A above or 12.A below has occurred.

   E. If an event or condition described in paragraph 11.A above occurs which is also an event or condition described in paragraph 12.A below, your rights and remedies described under paragraph 12.B below apply and supersede your rights described in this paragraph 11.

**12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

   A. You may take the actions listed in paragraph 12.B below if any of the following events or conditions occur:



LOAN #: REDACTED

(1)   I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2)   I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Deed of Trust; or

(3)   I sell or transfer title to the Real Property without first obtaining your written permission;

(4)   I fail to maintain insurance on the Real Property as required under this Agreement or the Deed of Trust;

(5)   I act or fail to act and as a result a lien senior to the lien of the Deed of Trust is filed against the Real Property;

(6)   I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7)   All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8)   A prior lienholder on the Real Property begins foreclosure under its security document;

(9)   The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10)   I fail to pay taxes on the Real Property;

(11)   My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

    (a)   A judgment is filed against me;

    (b)   I commit waste or otherwise destructively use or fail to maintain the Real Property;

    (c)   I die and I am survived by another person obligated as a Borrower under this Agreement; or

    (d)   I move out of the Real Property.

B. If an event described in paragraph 12.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1)   you may terminate any of my rights under my Account;

(2)   you may temporarily or permanently refuse to make any additional loans;

(3)   you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4)   you may foreclose the Deed of Trust;

(5)   you may reduce my Credit Limit; and

(6)   you may take any other action permitted by this Agreement, by law or in equity.

**13. MY IMPORTANT OBLIGATIONS.** I agree that:

A.   I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B.   I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C.   From time to time, if requested, I will supply you with current financial information about me.

D.   I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Deed of Trust.



LOAN #:REDACTED

E.  I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F.  I will not use or allow use of the Real Property for any illegal purpose.

G.  I will not move out of the Real Property.

H.  I will not permit a lien to be filed which takes priority over the Deed of Trust for future advances made under this Agreement.

I.  I will not break any promise made in this Agreement or in the Deed of Trust such as:

(1)  my promise not to exceed my Credit Limit; and

(2)  my "Important Obligations" listed in the Deed of Trust.

**14. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**15. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 15.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 11.D above.

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 11.B or 12.B above or my exercise of my suspension or termination rights under paragraphs 11.D or 15.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 7.D above.

**16. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1)  if the original Index is no longer available, you may change the Index and Margin;

(2)  you may make any change I agree to in writing;

(3)  you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

(4)  you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

**17. OTHER PROVISIONS.**

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement



LOAN #:REDACTED

without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Deed of Trust), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. **I waive my right to a jury trial.**

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z and/or applicable state law.

J. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to** COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170

L. Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. Notices. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 17.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 17.M.



LOAN #:REDACTED

N. Riders/Addenda. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum                                      ☐ _____ Rider
☐ _____ Addendum                   ☐ _____
☒ Billing Rights Statement

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

_____    5-21-05
Borrower: ALLANA A. BARONI              Date

_____    5-21-05
Borrower: JAMES J. BARONI               Date

_____    _____
Borrower:                                          Date

_____    _____
Borrower:                                          Date

**20050526-0003503**

Assessor's Parcel Number:
178-19-611-049
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

ESCROW#05-04-0462-KJL

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
CONNIE R. BROWN
Recording Requested By:
C. CHANNEL

COUNTRYWIDE HOME LOANS, INC.

Fee: $30.00
N/C Fee: $0.00

05/26/2005                    14:24:34
T20050098355

Requestor:
NEVADA TITLE COMPANY

Frances Deane                    HXP
Clark County Recorder    Pgs: 16

2850 W.HORIZON RIDGE
PKWY.#100
HENDERSON
NV 89052-3901

REDACTED    BARONI    A

610    REDACTED    D2  001  001

[Space Above This Line For Recording Data]

REDACTED                    REDACTED
[Escrow/Closing #]          [Doc ID #]

# DEED OF TRUST
(Line of Credit)

MIN REDACTED

THIS DEED OF TRUST, dated    MAY 19, 2005           , is between
ALLANA A BARONI, AND JAMES J BARONI, WIFE AND HUSBAND AS
JOINT TENANTS

residing at
2240 VILLAGE WALK DR UNIT 2311, HENDERSON, NV 89052-7800

• MERS HELOC - Deed of Trust
1E019-NV  (07/04)(d)            Page 1 of 7            Initials:





DOC ID #:REDACTED

the person or persons signing as "Grantor(s)" below and hereinafter referred to as "we," "our," or "us" and
RECONTRUST COMPANY, N.A.

as trustee and hereinafter referred to as the "Trustee," with an address at
225 W HILLCREST DRIVE, MSN: TO-02
THOUSAND OAKS, CA 91360
for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware
corporation, with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MERS is the
"Benificiary" under this Deed of Trust and is acting solely as nominee for
COUNTRYWIDE HOME LOANS, INC.

("Lender" or "you") and its successors and assigns, with an address of
4500 Park Granada, Calabasas, CA 91302-1613

PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to
the Trustee the premises located at:

2240 VILLAGE WALK DR UNIT 2311, HENDERSON
Street, Municipality

CLARK                           Nevada 89052-7800   (the "Premises").
County                                       ZIP
and further described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

The Premises includes all buildings and other improvements now or in the future on the Premises and all
rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances
thereto.

● MERS HELOC - Deed of Trust
1E019-NV (07/04)            Page 2 of 7            Initials:

DOC ID #:REDACTED

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

LOAN: This Deed of Trust will secure your loan to us in the principal amount of $ 134,998.00       or so much thereof as may be advanced and readvanced from time to time to ALLANA A. BARONI
JAMES J. BARONI

the Borrower(s) under the Home Equity Credit Line Agreement And Disclosure Statement (the "Note") dated MAY 19, 2005       , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Deed of Trust will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Deed of Trust, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Deed of Trust entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage, grant and convey the Premises to the Trustee.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally.
If this Deed of Trust is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Deed of Trust, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing

• MERS HELOC - Deed of Trust                                                    Initials: _____
1E019-NV  (07/04)                        Page 3 of 7

DOC ID #:REDACTED

and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Deed of Trust.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Note secured hereby.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Deed of Trust, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Deed of Trust secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Deed of Trust. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Deeds of Trust.

(g) PRIOR DEED OF TRUST: If the provisions of this paragraph are completed, this Deed of Trust is subject and subordinate to a prior deed of trust dated  MAY 19, 2005         and given by us for the benefit of
COUNTRYWIDE HOME LOANS

as beneficiary, in the original amount of $ 674,992.00          (the "Prior Deed of Trust"). We shall not increase, amend or modify the Prior Deed of Trust without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Deed of Trust promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Deed of Trust as and when required under the Prior Deed of Trust.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental

- MERS HELOC - Deed of Trust
1E019-NV  (07/04)                        Page 4 of 7                        Initials:_____

DOC ID #:REDACTED

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(k) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Deed of Trust may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Deed of Trust without losing your rights in the Premises.

DEFAULT; ACCELERATION: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, you may declare all amounts secured by this Deed of Trust immediately due and payable and the Trustee may foreclose upon this Deed of Trust or sell the Premises at a public sale. This means that you or the Trustee may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Deed of Trust. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you or the Trustee may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure or public sale. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure or to public sale, including, but not limited to, trustee's fees, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports.

ABSOLUTE ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: We hereby unconditionally assign to you the rents of the Premises. Nevertheless, you will allow us to use the rents, if any, until such time as any event or condition of default as described in Paragraph 12.A of the Note occurs. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Deed of Trust and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Deed of Trust. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Deed of Trust will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Deed of Trust is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Deed of Trust, and provided any obligation to make further advances under the Note has terminated, this Deed of Trust and your rights in the Premises shall end.

DOC ID # REDACTED

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at

For MERS:

P.O. Box 2026, Flint, MI 48051-2026

For Lender:

COUNTRYWIDE HOME LOANS, INC.


4500 Park Granada, Calabasas, CA 91302-1613


or to such other address as you may designate by notice to us. Any notice provided for in this Deed of Trust shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Deed of Trust and provided your obligation to make further advances under the Note has terminated, the Trustee shall discharge this Deed of Trust without charge to us, except that we shall pay any fees for recording of a satisfaction of this Deed of Trust.

GENERAL: You or the Trustee can waive or delay enforcing any of your rights under this Deed of Trust without losing them. Any waiver by you of any provisions of this Deed of Trust will not be a waiver of that or any other provision on any other occasion.

TRUSTEE: Trustee accepts the trusts herein created when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee, by its acceptance hereof, agrees to perform and fulfill the trusts herein created, and shall be liable only for its negligence or misconduct. The Trustee waives any statutory fee and agrees to accept reasonable compensation from Grantor for any services rendered by it in accordance with the terms of this Deed of Trust. Upon receipt by Trustee of instructions from Beneficiary at any time or from time to time, Trustee shall (a) give any notice or direction or exercise any right, remedy or power hereunder or in respect of the Premises as shall be specified in such instructions, and (b) approve as satisfactory all matters required by the terms hereof to be satisfactory to Trustee or Beneficiary. Trustee may, but need not, take any of such actions in the absence of such instructions. Trustee may resign at any time upon giving of not less than 30 days' prior notice to Beneficiary, but will continue to act as trustee until its successor shall have been chosen and qualified. In the event of the death, removal, resignation, or refusal or inability to act of Trustee, Beneficiary shall have the irrevocable power, with or without cause, without notice of any kind, without specifying any reason therefor, and without applying to any court, to select and appoint a successor trustee by filing a deed or other instrument of appointment for record in each office in which this Deed of Trust is recorded, and upon such recordation the successor trustee shall become vested with the same powers, rights, duties and authority of the Trustee with the same effect as if originally made Trustee hereunder. Such successor shall not be required to give bond for the faithful performance of its duties unless required by Beneficiary.

Initials: _____

DOC ID #:REDACTED

THIS DEED OF TRUST has been signed by each of us under seal on the date first above written.

WITNESS:

_____

_____ (SEAL)

Grantor: ALLANA A. BARONI

_____ (SEAL)

Grantor: JAMES J. BARONI

_____ (SEAL)

Grantor:

_____ (SEAL)

Grantor:

STATE OF ~~NEVADA~~ CALIFORNIA
COUNTY OF LOS ANGELES

This instrument was acknowledged before me on MAY 21, 2005 _____ by

_____ ALLANA A. BARONI AND JAMES J. BARONI _____

_____

_____

Wendi R. Castaneda

Mail Tax Statements To:
ALLANA BARONI

3339 VIA VERDE COURT
CALABASAS, CA 91302

WENDI R. CASTANEDA
Commission # 1400526
Notary Public - California
Ventura County
My Comm. Expires Feb 13, 2007

● MERS HELOC - Deed of Trust
1E019-NV (07/04)                    Page 7 of 7

Escrow No.: REDACTED

## EXHIBIT "A"

## LEGAL DESCRIPTION

### PARCEL ONE (1) – UNIT:

LIVING UNIT 2311, IN BUILDING 2 AS SHOWN ON THE FINAL MAP OF **THE DISTRICT AT GREEN VALLEY RANCH**, A CONDOMINIUM SUBDIVISION AND COMMON INTEREST COMMUNITY, ON FILE IN BOOK 119 OF PLATS, PAGE 7, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA (HEREINAFTER THE "PLAT").

### PARCEL TWO (2) – COMMON ELEMENTS:

1/88TH INTEREST AS A TENANT-IN-COMMON IN THE COMMON ELEMENTS SHOWN ON THE PLAT, IN ACCORDANCE WITH AND SUBJECT TO THE TERMS OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR **THE CONDOMINIUMS AT THE DISTRICT** RECORDED SEPTEMBER 27, 2004, IN BOOK 20040927 AS DOCUMENT NO. 0005038 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA (HEREINAFTER THE "DECLARATION").

EXCEPTING THEREFROM, ALL UNITS SHOWN ON THE PLAT.

RESERVING THEREFROM, THE RIGHT TO USE ANY OF THOSE AREAS DESIGNATED AS LIMITED COMMON ELEMENTS IN THE PLAT AND/OR THE DECLARATION.

FURTHER RESERVING THEREFROM, FOR THE BENEFIT OF THE OWNERS OF ALL UNITS SHOWN ON THE PLAT (EXCEPT THE UNIT REFERRED TO IN PARCEL ONE (1) ABOVE), NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT AND OTHER PURPOSES ON, OVER AND ACROSS THE COMMON ELEMENTS, AS DEFINED IN, AND SUBJECT TO THE DECLARATION.

### PARCEL THREE (3) – LIMITED COMMON ELEMENTS:

THE EXCLUSIVE RIGHT TO USE, POSSESS AND OCCUPY THE FOLLOWING, SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION:

PARKING SPACE NUMBER: LCE-P-#37; AND

STORAGE SPACE NUMBER: LCE-SG-#35,

ALL OF WHICH ARE DESCRIBED AS LIMITED COMMON ELEMENTS IN
SECTION 5.2(a) AND 5.3(a) OF THE DECLARATION AND WHICH ARE
APPURTENANT TO PARCELS ONE (1) AND TWO (2) DESCRIBED ABOVE.

TOGETHER WITH THE EXCLUSIVE RIGHT TO USE, POSSESS AND OCCUPY
THE FOLLOWING, SUBJECT TO THE TERMS AND PROVISIONS OF THE
DECLARATION:

PARKING SPACE NUMBER: LCE-P-#38; AND

STORAGE SPACE NUMBER: LCE-SF-#09,

ALL OF WHICH ARE HEREBY ASSIGNED AS LIMITED COMMON ELEMENTS
IN ACCORDANCE WITH SECTION 5.2(b) AND/OR 5.3(b), AS APPLICABLE, OF
THE DECLARATION AND WHICH ARE APPURTENANT TO PARCELS ONE (1)
AND TWO (2) DESCRIBED ABOVE.

TOGETHER WITH THE AREAS DESIGNATED AS LIMITED COMMON
ELEMENTS, ALLOCATED TO PARCELS ONE (1) AND TWO (2) IN THE
DECLARATION.

**PARCEL FOUR (4) – APPURTENANT EASEMENTS:**

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE,
ENJOYMENT AND OTHER PURPOSES ON, OVER AND ACROSS THE
COMMON ELEMENTS AS DEFINED IN AND SUBJECT TO THE
DECLARATION, WHICH EASEMENTS ARE APPURTENANT TO PARCELS ONE
(1), TWO (2) AND THREE (3) ABOVE.

# SECOND HOME RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
178-19-611-049

Prepared By:
CONNIE R. BROWN

REDACTED                    REDACTED
[Escrow/Closing #]          [Doc ID #]

**MULTISTATE SECOND HOME RIDER** - Single Family - **Fannie Mae/Freddie Mac** UNIFORM
**INSTRUMENT**

VMP -365R (0405)   CHL (06/04)(d)        Page 1 of 3              Initials: AB
                   VMP Mortgage Solutions, Inc. (800)521-7291              **Form 3890** 1/01

REDACTED                    REDACTED

DOC ID #:REDACTED

THIS SECOND HOME RIDER is made this NINETEENTH                day of
MAY, 2005           , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower" whether there are one or more persons undersigned) to secure
Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:
    2240 VILLAGE WALK DR UNIT 2311, HENDERSON, NV 89052-7800

[Property Address]

    In addition to the covenants and agreements made in the Security Instrument, Borrower and
Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and
are replaced by the following:
    **6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.
    **8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application
process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's
knowledge or consent gave materially false, misleading, or inaccurate information or statements
to Lender (or failed to provide Lender with material information) in connection with the Loan.
Material representations include, but are not limited to, representations concerning Borrower's
occupancy of the Property as Borrower's second home.

Initials:

-365R (0405)   CHL (06/04)         Page 2 of 3              Form 3890 1/01

DOC ID #:REDACTED

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Second Home Rider.

_____ (Seal)
ALLANA A. BARONI                                                    -Borrower

_____ (Seal)
JAMES J. BARONI                                                     -Borrower

_____ (Seal)
                                                                    -Borrower

_____ (Seal)
                                                                    -Borrower

-365R (0405)    CHL (06/04)          Page 3 of 3                    Form 3890  1/01

# CONDOMINIUM RIDER

Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
178-19-611-049
Prepared By:
CONNIE R. BROWN

REDACTED                    REDACTED
[Escrow/Closing #]          [Doc ID #]

**MULTISTATE CONDOMINIUM RIDER** - Single Family/Second Mortgage
Page 1 of 4

Initials: AB

  -208R (0402)    CHL (06/04)(d)                               3/99
VMP Mortgage Solutions, Inc. (800)521-7291


REDACTED                         REDACTED

DOC ID #:REDACTED

THIS CONDOMINIUM RIDER is made this NINETEENTH            day of
MAY, 2005          , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by
the undersigned the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and
located at
    2240 VILLAGE WALK DR UNIT 2311, HENDERSON, NV 89052-7800

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:
            DISTRICT AT GREEN VALLEY RANCH

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the"Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses,
proceeds and benefits of Borrower's interest.
    **CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
    **A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration
or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations;
and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.
    **B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to
Lender and which provides insurance coverage in the amounts (including deductible levels), for the
periods, and against loss by fire, hazards included within the term "extended coverage," and any
other hazards, including, but not limited to, earthquakes and floods, from which Lender requires
insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to
Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's
obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is
deemed satisfied to the extent that the required coverage is provided by the Owners Association
policy.

Initials:

DOC ID #:REDACTED

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

DOC ID #:REDACTED

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Condominium Rider.

_____ (Seal)
ALEANA A. BARONI                                              - Borrower

_____ (Seal)
JAMES J. BARONI                                              - Borrower

_____ (Seal)
                                                              - Borrower

_____ (Seal)
                                                              - Borrower

EXHIBIT "A"

relationships that work

# green tree

| | |
|---|---|
| PO Box 6172 | Tel 1-800-643-0202 |
| Rapid City, SD 57709-6172 | GTServicing.com |

+ 0290568 000000520 076TRS 0055397 0

**ALLANA A BARONI**
**JAMES J BARONI**
3339 VIA VERDE CT
CALABASAS CA 91302-3085

June 17, 2010



**Re: Green Tree Servicing LLC\* ("Green Tree") Account No.: 897560165**
**Creditor: THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TO**
**JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING**
**HOME EQUITY LOAN TRUST, SERIES 2005-D**

Dear Valued Customer:

The servicing of your loan was transferred from BAC Home Loans Servicing, LP, a subsidary of Bank of America, N.A. to Green Tree on June 1, 2010. We are pleased to welcome you to Green Tree.

As your new servicer for the referenced account, Green Tree is required to inform you of the following important notice regarding your rights under federal law:

**AS OF THE DATE OF THIS LETTER, YOU OWE $135,395.60. BECAUSE OF INTEREST, LATE CHARGES, AND OTHER CHARGES THAT MAY VARY FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION. FOR FURTHER INFORMATION, CONTACT CUSTOMER SERVICE AT THE ADDRESS OR TOLL-FREE NUMBER LISTED ABOVE.**

**UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION OF THE DEBT, WE WILL ASSUME THAT THE DEBT IS VALID. IF YOU NOTIFY US IN WRITING WITHIN THIRTY (30) DAYS OF RECEIVING THIS NOTICE, WE WILL OBTAIN VERIFICATION OF THE DEBT (OR OBTAIN A COPY OF A JUDGMENT, IF THE DEBT HAS BEEN REDUCED TO JUDGMENT) AND MAIL THE VERIFICATION TO YOU. IN ADDITION, UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, WE WILL ALSO PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.**

To ensure timely posting of your payments, please send all payments to your new servicer at the address indicated below:

**Green Tree**
**PO Box 94710**
**Palatine, IL 60094-4710**

We at Green Tree are honored to serve you. If you need to contact us or have any questions, please call Green Tree at 1-866-270-3285, from 6:00 a.m. to 7:00 p.m. MST, Monday through Thursday, or 6:00 a.m. to 12:00 p.m. MST, Friday and Saturday, or write to us in regard to this debt at Customer Service, PO Box 6172, Rapid City, South Dakota 57709-6172.

Respectfully,

Green Tree

\*Green Tree Servicing LLC and related entities, including, for certain loans, in Alabama, Green Tree-AL LLC; in Minnesota, Green Tree Loan Company; and in Pennsylvania, Green Tree Consumer Discount Company.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

This letter is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

EXHIBIT "B"

CWHEQ Revolving Home Equity Loan Asset Backed Notes/Series 2005-D - 8-K - For 8/30/05 - EX-99.1

SEC No.: CWHEQ Revolving Home Equity Loan Asset Backed Notes/Series 2006-D - Bk - For §0000...

ARTICLE I

DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

Section 1.01. Definitions.

Section 1.02. Other Terms.

Section 1.03. Rules of Construction.

## ARTICLE V

### THE MASTER SERVICER, THE SPONSOR, AND THE DEPOSITOR

**Section 5.01 Liability of the Sponsor, the Master Servicer, and the Depositor.**

## ARTICLE VII

### SERVICING TERMINATION

**Section 7.01  Events of Servicing Termination.**

### Section 8.05  Delegation of Duties.

### Section 8.06  Indemnification by the Master Servicer.

www.exprints.com/apple.php-G.htm

SEC Info - CWHEQ Revolving Home Equity Loan Asset Backed Notes/Series 2005-D - 8-K - For 9/26/06

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

### Section 8.01. Amendment.

This Agreement may be amended from time to time by the Sponsor, the Master Servicer, the Depositor, the Owner Trustee and the Indenture Trustee, if the Rating Agency Condition is satisfied, and with the consent of the Credit Enhancer (in connection with which the consent of the Credit Enhancer shall not be unreasonably withheld). However, may be primarily subject to change the permitted liabilities of the Trust Outstanding except without the consent of the Holders of the Outstanding amount of each Class(es) of Notes. For this purpose this purpose will may vary. For each amendment to the Agreement. This Agreement may also be amended from time to time by the Sponsor, the Master Servicer, the Depositor, the Owner Trustee and the Indenture Trustee, with the consent of the Credit Enhancer (which consent shall not be unreasonably withheld), to modify the appropriate Outstanding Amount of this Agreement.

The Indenture Trustee may enter into any amendment of this Agreement to which the Rating Agency Condition is satisfied, and need not be requested by an Issuer. However, the Indenture Trustee shall enter into any amendment of this Agreement

(ii) that does not impose further obligations or liabilities on the Indenture Trustee, and

(iii) as to which either the Rating Agency Condition is satisfied or Holders of not less than 66⅔% of the aggregate Outstanding Amount of each Class(es) of Notes and the Credit Enhancer have consented.

Following any such execution and delivery of any amendment to this Agreement or to the Indenture Trustee, the Credit Enhancer represented the amendment, or to the Transferor, if the Transferor represented the amendment, or to the Master Servicer, if the Master Servicer represented the amendment, shall reimburse the Credit Enhancer for the reasonable out-of-pocket costs and expenses incurred by them in connection with the amendment.

Before the execution of the amendment, the party to this Agreement requesting the amendment shall notify each, the party to this Agreement copies of the amendment. The Indenture Trustee, the substance of each counterparts of the instruments affecting the amendment to the Credit Enhancer.

### Section 8.02. Governing Law.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO THE PRINCIPLES THEREOF (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK) THAT WOULD APPLY THE LAWS OF ANOTHER STATE.

### Section 8.03. Notices.

All notices, demands, instructions, consents, and other communications required or permitted under this Agreement shall be in writing and signed by the party giving it and shall, except as otherwise specifically provided below, be delivered personally or by facsimile, in which case it is deemed to have been personally delivered or sent by facsimile is delivered when receipt is confirmed or by first class mail. If nonmailable has been so facsimiled, if sent by first class mail, be deemed to be received on the next Business Day following the receipt in accordance with this notice mail, the confirmation of transmission. Unless otherwise specified in a notice sent or delivered in accordance with the provisions of this Section, notices, demands, instructions, consents, and other communication in writing shall be sent or to be made to the respective parties at their respective addresses indicated below:

If to the Trust at:

CWHEQ Revolving Home Equity Loan Trust, Series 2005-D
c/o Wilmington Trust Company, as Owner Trustee
1100 North Market Street
Wilmington, DE 19890-0001

**38**

---

Attention: Corporate Trust Administration
Telecopy: (302) 651-8889

If to the Depositor at:

CWHEQ, Inc.
4500 Park Granada
Calabasas, California 91302
Attention: Legal Department
Telecopy: (818) 225-4062

If to the Master Servicer at:

Countrywide Home Loans, Inc.
4500 Park Granada
Calabasas, California 91302
Attention: Legal Department
Telecopy: (818) 225-4089

If to the Indenture Trustee at:

The Corporate Trust Office
Telecopy: (302) 761-9315

If to the Credit Enhancer at:

Financial Security Assurance Inc.
31 West 52nd Street
New York, New York 10019
Attention: Managing Director - Transaction Oversight
Re: Servicing Home Equity Loan Asset-Backed Notes, Series 2005-D
Telecopy: (212) 339-3518
Confirmation: (212) 826-0100

If to Moody's at:

Residential Loan Monitoring Group, 4th Floor
99 Church Street
New York, New York 10007

and if to Standard & Poor's at:

55 Water Street
New York, New York 10041

Whenever a Notice or other communication to the Credit Enhancer refers to an event of servicing termination or with respect to which failure on the part of the Credit Enhancer to respond would constitute consent or acceptance, then a copy of the notice or other communication shall also be sent to the attention of the General Counsel of the Credit Enhancer and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

### Section 8.04. Severability of Provisions.

Any provisions of this Agreement that are held invalid for any reason or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of the invalidity of such provision, and the prohibition or unenforceability of this Agreement, and the prohibition or unenforceability that provision in any other jurisdiction.

### Section 8.05. Assignment.

Except as provided in Sections 5.02 and 3.04, this Agreement may not be assigned by the Depositor or the Master Servicer without the prior consent of the Credit Enhancer.

### Section 8.06. Third-Party Beneficiaries.

This Agreement will be binding on the parties to this Agreement, and inure to the benefit of the parties to this Agreement, the Noteholders, the Transferor, the Note Insurer, the Owner Trustee and the Credit Enhancer and their respective successors and permitted assigns. The Credit Enhancer is a third party beneficiary of this Agreement. No other person will have any rights under this Agreement.

### Section 8.07. Counterparts; Electronic Delivery.

This Agreement may be executed in any number of copies, and by the different parties hereto on the same or separate counterparts, each of which shall be deemed to be an original. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or other electronic transmission shall be effective as delivery of a manually executed counterpart of this Agreement.

**39**

SEC Info - CWHEQ Revolving Home Equity Loan Asset Backed Notes/Series 2006-D - 8-K - For 8/30/06...

uniform section on the same or separate counterparts, each of which shall be considered to be an original instrument, may be signed by

Delivered by facsimile transmission or other electronic communication device capable of transmitting or creating a printable written record, and when so delivered shall have the effect of delivery of an original manually signed signature page to this Agreement.

Section 8.06. Effect of Headings and Table of Contents.

The Article and Section headings in this Agreement and the Table of Contents are for convenience only and shall not affect the construction of this Agreement.

IN WITNESS WHEREOF, the Depositor, the Sponsor and Master Servicer, the Trust, and the Indenture Trustee have caused this Agreement to be duly executed by their respective officers all as of the day and year first above written.

CWABS, Inc.,
Depositor

By: /s/ Anne Nazzaro Jr.
    Name: Anne Nazzaro Jr.
    Title: Vice President

COUNTRYWIDE HOME LOANS, INC.
Sponsor and Master Servicer

By: /s/ Anne Nazzaro Jr.
    Name: Anne Nazzaro Jr.
    Title: Senior Vice President

Indenture Credit Bank, N.A.
Indenture Trustee

By: /s/ Kellie L. Richardson
    Name: Kellie L. Richardson
    Title: Attorney-In-Fact

CWHEQ REVOLVING HOME EQUITY LOAN TRUST, Series 2006-D

By: WILMINGTON TRUST COMPANY, not in its
    individual capacity but solely as Owner
    Trustee

By: /s/ Anne S. Nazzaro
    Name: Anne S. Nazzaro
    Title: Assistant Vice President

State of CALIFORNIA _____
County of LOS ANGELES _____  } ss.:

On the 30th day of August, 2005 before me, a notary public in and for the State of California, personally appeared Anne Nazzaro Jr., known to me who, being by me duly sworn, did depose and say that he is the Vice President of Countrywide Home Loans, California, that he is the Vice President of said corporation, one of the parties that executed the foregoing instrument; and that he signed his name thereto by order of the Board of Directors of said corporation.

/s/ Rhonda J. Daniel
_____

SEC Info - CWHEQ Revolving Home Equity Loan Asset Backed Notes/Series 2006-D - 8-K - For 8/30/06...

Notary Public

My Commission Expires: 10/15/05

State of CALIFORNIA _____
County of LOS ANGELES _____  } ss.:

On the 30th day of August, 2005 before me, a notary public in and for the State of California, personally appeared Anne Nazzaro Jr., known to me who, being by me duly sworn, did depose and say that he is the Senior Vice President of Countrywide Home Loans, Inc., a New York corporation, one of the parties that executed the foregoing instrument; and that he signed his name thereto by order of the Board of Directors of said corporation.

/s/ Rhonda J. Daniel
_____

Notary Public

My Commission Expires: 10/15/05

State of ILLINOIS _____
County of COOK _____  } ss.:

On the 30th day of August, 2005 before me, a notary public in and for the State of Illinois, personally appeared Kellie L. Richardson, known to me who, being by me duly sworn, did depose and say that she resides at Plainfield, Illinois that she is the Attorney-In-Fact of JPMorgan Chase Bank, N.A., a national banking association, one of the parties that executed the foregoing instrument; and that she signed his name thereto by order of the Board of Directors of said corporation.

/s/ Diane Anne Buntic
_____

Notary Public

My Commission Expires: 7/9/09

State of DELAWARE _____
County of NEW CASTLE _____  } ss.:

On the 30th day of August, 2005 before me, a notary public in and for the State of Delaware, personally appeared Anne S. Nazzaro, known to me who, being by me duly sworn, did depose and say that she resides at Wilmington, Delaware that she is an Assistant Vice President of Wilmington Trust Company, not in its individual capacity but in its capacity as Owner Trustee of CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2006-D, one of the parties that executed the foregoing instrument; and that she signed his name thereto by order of the Board of Directors of said corporation.

/s/ Christopher Kamme
_____

Notary Public - State of Delaware

My Commission Expires: 2/11/07

INDENTURE LOAN AGREEMENT

(Delivered to Indenture Trustee Only)

EXHIBIT A



SEC Info - CWHEQ Revolving Home Equity Loan Asset Backed Notes/Series 2006-D - 8-K - For 8/30/06...

"Master Servicer" means Countrywide Home Loans, Inc., a New York corporation and any successor to it and any successor under this Agreement.

"Minimum Monthly Payment" for any Mortgage Loan and any month means the minimum amount required to be paid by the related mortgagor in that month.

"Net Liquidation Proceeds" for any Liquidated Mortgage Loan means Liquidation Proceeds net of Liquidation Expenses.

"Officer's Certificate" means a certificate (i) signed by the Chairman of the Board, the Vice Chairman of the Board, the President, a Managing Director, a Vice President (however denominated), an Assistant Vice President, Treasurer, the Secretary, an Assistant Secretary, or one of the Assistant Treasurers or Assistant Secretaries of the Depositor, the Servicer or the Master Servicer, as applicable, or (ii) if provided for in this Agreement, signed by a Servicing Officer.

"Opinion of Counsel" means a written opinion of counsel acceptable to the Indenture Trustee, who may be in-house counsel for the Depositor, the Servicer or the Master Servicer, except that any opinion relating to Section 5.05 or relating to taxation must be an opinion of independent counsel and also, if the notes are rated, delivered to the Rating Agency, is reasonably acceptable to the Rating Agency.

"Purchase Price" with respect to any Mortgage Loan required to be purchased by the Sponsor pursuant to Section 2.03 or 2.04 or purchased at the option of the Master Servicer pursuant to Section 3.01 or 2.04 means an amount equal to the sum of

(i) 100% of the unpaid principal balance of the Mortgage Loan on the date of such purchase,

(ii) accrued interest on the Mortgage Loan at the applicable Mortgage Rate (or, if at the applicable Adjusted Mortgage Rate if the purchaser is Countrywide Home Loans and the loan is being purchased by Countrywide Home Loans) from the date through which interest was last paid by the Mortgagor to the due date in which the Purchase Price is to be distributed; and

(iii) In the case of any Mortgage Loan required to be purchased by the Sponsor because of a violation of any representation, warranty or absolute lending to such loan, or a violation of any representation or warranty relating to such Mortgage Loan or any cost and damages incurred by the Trust relating to such violation of any warranty or absolute lending fee with respect to the related Mortgage Loan.

"Seller" means any Seller of Mortgage Loans pursuant to the Purchase Agreement.

"Servicing Officer" means any officer of the Master Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name and specimen signature appear on a list of servicing officers furnished to the Indenture Trustee.

"Transfer Deficiency" with respect to a Loan Group means that the excess of the Loan Group Balance of that Loan Group over the sum of the related Class A Note Principal Balance of those Loan Groups after a Mortgage Loan in the related Loan Group pursuant to Section 3.01(b) or 2.04(d) would be less than

---

SEC Info - CWHEQ Revolving Home Equity Loan Asset Backed Notes/Series 2006-D - 8-K - For 8/30/06...

the related Required Transferor Subordinated Amount.

The amount of any Transfer Deficiency with respect to a Loan Group is the lesser of

o the Asset Balance of the Defective Mortgage Loan and

o the excess of

  o the related Required Transferor Subordinated Amount, over

  o the excess of the Loan Group Balance of that Loan Group over the Note Principal Balance of the related Class of Notes after a retransfer pursuant to Section 3.01(b) or 2.04(d), without taking into account the Asset Balance of any Defective Mortgage Loan being retransferred in connection with the Transfer Deficiency.

In any computation involving a Mortgage Loan required to be purchased by absolute lending (or the filing out of a violation of any representation or warranty loading (or with respect to the Mortgage Loan, the Transferor Interest shall be recomputed for the cost and damages incurred by the Trust relating to the violation of any predatory or absolute lending law with respect to the Mortgage Loan.

"Transfer Deposit Amount" has the meaning given to it in Section 2.07.

"Transfer Notice Date" has the meaning given to it in Section 2.06.

"Value(ation)" of any Mortgaged Property means the lesser of (i) the Appraised Value of the Mortgaged Property and (ii) in the case of a Mortgaged Property purchased within one year of the origination of the related Mortgage Loan, the purchase price of the Mortgaged Property.

The following have the meaning given to them in the indenture:

Additional Principal Payment Amount
Additional Senior Equity Loans
Additional Loan Account
Additional Home Equity Loans
Additional Loan Group Balance
Allocable Transferor Interest
Asset Balance
Available Amount
Available Funds Carryforward
Basis Risk Carryforward
Basis Risk Shortfall
Business Day
Closing Date
Collection Period
Corporate Trust Office
Credit Enhancement Draw Amount
Credit Enhancer
Credit Enhancer Default
Credit Limit
Credit Loss Agreement
Custodial Agreement
Eligible Account
Eligible Investments
Cut-off Date Asset Balance
Initial Transferor Subordinated Amount
Initial Trustee
Insolvency Event
Insolvency Proceeds
Insured Amount
Interest Determination Date
Interest Period
Interest Rate Allocation Percentage
Investor Fixed Allocation Percentage
Investor Floating Allocation Percentage
Investor Interest Collections
Investor Losses
Investor Loss Reduction Amount
Investor Principal Collections
Investor Variable Principal Amount
Items Prepaid
Monthly Trustee Advance
Note Agreement
Note Balance
Loan Group
Loan Balance
Loan Rate

SEC Info - CWMBS Revolving Home Equity Loan Asset Backed Notes/Series 2006-G - 8-K · For 9/30/06...

Mortgage Securitization
CertifiedForensicLoanAuditors.com
Serving Attorneys - All 50 States Attorney Operated / NBN Approved

Copyright © 2011 Finra Finnigan & Company. All Rights Reserved.

EXHIBIT "C"

Screen Shot April 1, 2013

**MERS**
ServiceriD
www.mers-serviceriid.org

**Process Loans, Not Paperwork™**

1 record matched your search:

Need help? ❓

MIN: 1001337-0000626254-0        Note Date: 05/19/2005        MIN Status: Active

Servicer: Green Tree Servicing LLC                           Phone: (800) 643-0202
          Tempe, AZ

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Select borrower type and enter borrower information to see Investor for MIN 1001337-0000626254-0.

⊖ **Investor for Individual Borrower**

Your entries may be either upper or lower case.
Fields marked ✱ are required.

Last Name: Baroni                      ✱

SSN: [    ] - [    ] - [    ]      ✱

☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower
or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor
must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match
the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should
verify the results with their loan servicer. ✱

[ Submit ]

○ **Investor for Corporation/Non-Person Entity Borrower**

Servicer: Green Tree Servicing LLC                           Phone: (800) 643-0202
          Tempe, AZ

Investor: **The Bank of New York Mellon**

[ Close Window ]

EXHIBIT "D"

| Tran Date | Tran Amt | Code | Due Date | Total | Prin Due | Interest | Insurance | Escrow | Late Chg Coll | Unapplied | Fee Amt | Back Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/28/2009 | 86,096.49 | 191 Charge-Off | | 86,096.49 | 81,354.48 | 4,742.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 05/28/2009 |
| 12/16/2008 | -39.41 | QFA Acq Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12/16/2008 |
| 11/17/2008 | -39.41 | QFA Acq Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11/17/2008 |
| 11/05/2008 | 39.41 | 160 Payment:Late Chrg Only- | 11/01/2008 | 39.41 | 0.00 | 0.00 | 0.00 | 0.00 | 39.41 | 0.00 | 0.00 | 10/29/2008 |
| | 656.81 | 100 Payment:Cash | 10/01/2008 | 656.81 | 54.72 | 602.09 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/29/2008 |
| | 656.81 | 500 Reversal:Pymt-Cash | 10/01/2008 | 656.81 | 54.72 | 602.09 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/29/2008 |
| | 656.81 | 100 Payment:Cash | 10/01/2008 | 656.81 | 54.72 | 602.09 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/29/2008 |
| | 696.22 | 500 Reversal:Pymt-Cash | 10/01/2008 | 696.22 | 54.72 | 641.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/29/2008 |
| | -39.41 | QFA Acq Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/16/2008 |
| | -39.41 | QFR Acq Fee Assessmnt Rev | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/16/2008 |
| | -39.41 | QFA Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/16/2008 |
| | 39.41 | QFR Acq Fee Assessmnt Rev | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/16/2008 |
| | -39.41 | QFA Acq Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/16/2008 |
| 10/29/2008 | 696.22 | 100 Payment:Cash | 10/01/2008 | 696.22 | 54.72 | 641.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/29/2008 |
| 10/16/2008 | 39.41 | QFR Acq Fee Assessmnt Rev | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/16/2008 |
| | -39.41 | QFA Acq Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/16/2008 |
| 10/06/2008 | 78.82 | 160 Payment:Late Chrg Only- | 10/01/2008 | 78.82 | 0.00 | 0.00 | 0.00 | 0.00 | 78.82 | 0.00 | 0.00 | 09/30/2008 |
| | 656.81 | 100 Payment:Cash | 09/01/2008 | 656.81 | 54.05 | 602.76 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/30/2008 |
| | 656.81 | 500 Reversal:Pymt-Cash | 09/01/2008 | 656.81 | 54.05 | 602.76 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/30/2008 |
| | 656.81 | 100 Payment:Cash | 09/01/2008 | 656.81 | 54.05 | 602.76 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/30/2008 |
| | 735.63 | 500 Reversal:Pymt-Cash | 09/01/2008 | 735.63 | 54.05 | 642.17 | 0.00 | 0.00 | 39.41 | 0.00 | 0.00 | 09/30/2008 |
| | -39.41 | QFA Acq Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/16/2008 |
| | -39.41 | QFR Acq Fee Assessmnt Rev | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/16/2008 |
| | -39.41 | QFA Acq Fee Assessmnt Rev | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/16/2008 |
| | 39.41 | QFR Acq Fee Assessmnt Rev | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/16/2008 |
| | -39.41 | QFA Acq Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/16/2008 |
| 09/30/2008 | 735.63 | 100 Payment:Cash | 09/01/2008 | 735.63 | 54.05 | 642.17 | 0.00 | 0.00 | 39.41 | 0.00 | 0.00 | 09/30/2008 |
| 09/16/2008 | 39.41 | QFR Acq Fee Assessmnt Rev | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/16/2008 |
| | -39.41 | QFA Acq Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 09/16/2008 |
| 09/09/2008 | 39.41 | 500 Reversal:Pymt-Cash | 09/01/2008 | 39.41 | 0.00 | 39.41 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 08/29/2008 |
| | 39.41 | 100 Payment:Cash | | 39.41 | 39.41 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 08/29/2008 |
| | -39.41 | QFA Acq Fee Assessed (W/Li | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 08/18/2008 |

| Date | Description | Posting Date | Amt | Interest | Balance | | | | | | Ref Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 39.41 QFR Acq Fee Assessment Rev | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/18/2008 |
| | -39.41 QFA Acq Fee Assessed (W/Li | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/18/2008 |
| 08/29/2008 | 39.41 100 Payment:Cash | 09/01/2008 | 39.41 | 0.00 | 39.41 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/29/2008 |
| 08/25/2008 | 656.81 100 Payment:Cash | 08/01/2008 | 656.81 | 53.64 | 603.17 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/25/2008 |
| | 656.81 500 Reversal:Pymt-Cash | 08/01/2008 | 656.81 | 53.64 | 603.17 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/25/2008 |
| | 656.81 100 Payment:Cash | 08/01/2008 | 656.81 | 53.64 | 603.17 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/25/2008 |
| | 656.81 500 Reversal:Pymt-Cash | 08/01/2008 | 656.81 | 53.64 | 603.17 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/25/2008 |
| | 656.81 100 Payment:Cash | 08/01/2008 | 656.81 | 53.64 | 603.17 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/25/2008 |
| 08/18/2008 | 39.41 QFR Acq Fee Assessment Rev | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/18/2008 |
| | -39.41 QFA Acq Fee Assessed (W/Li | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/18/2008 |
| 07/11/2008 | 656.81 100 Payment:Cash | 07/01/2008 | 656.81 | 53.24 | 603.57 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 07/11/2008 |
| 06/10/2008 | 656.81 100 Payment:Cash | 06/01/2008 | 656.81 | 52.85 | 603.96 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 06/10/2008 |
| 05/09/2008 | 656.81 100 Payment:Cash | 05/01/2008 | 656.81 | 52.46 | 604.35 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 05/09/2008 |
| 04/09/2008 | 656.81 100 Payment:Cash | 04/01/2008 | 656.81 | 52.07 | 604.74 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 04/09/2008 |
| 03/10/2008 | 656.81 100 Payment:Cash | 03/01/2008 | 656.81 | 51.69 | 605.12 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 03/10/2008 |
| 02/13/2008 | 656.81 100 Payment:Cash | 02/01/2008 | 656.81 | 51.32 | 605.49 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 02/13/2008 |
| 01/09/2008 | 656.81 100 Payment:Cash | 01/01/2008 | 656.81 | 50.94 | 605.87 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 01/09/2008 |
| 12/12/2007 | 656.81 100 Payment:Cash | 12/01/2007 | 656.81 | 50.56 | 606.25 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 12/12/2007 |
| 11/15/2007 | 656.81 100 Payment:Cash | 11/01/2007 | 656.81 | 50.19 | 606.62 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 11/15/2007 |
| 10/12/2007 | 656.81 100 Payment:Cash | 10/01/2007 | 656.81 | 49.82 | 606.99 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 10/12/2007 |
| 09/12/2007 | 656.81 100 Payment:Cash | 09/01/2007 | 656.81 | 49.46 | 607.35 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 09/12/2007 |
| 08/13/2007 | 656.81 100 Payment:Cash | 08/01/2007 | 656.81 | 49.10 | 607.71 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 08/13/2007 |
| 07/13/2007 | 656.81 100 Payment:Cash | 07/01/2007 | 656.81 | 48.73 | 608.08 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 07/13/2007 |
| 05/24/2007 | 656.81 100 Payment:Cash | 06/01/2007 | 656.81 | 48.38 | 608.43 | 0.00 | 0.00 | 0.00 | 0.00 / 0 | 0.00 / 0 | 05/24/2007 |

| Date | Description | Eff. Date | Amount | Amount | Amount | | | | | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/03/2007 | 656.81 100 Payment:Cash | 05/01/2007 | 656.81 | 48.02 | 608.79 | 0.00 | 0.00 | 0.00 | 0.00 | 05/03/2007 |
| 04/05/2007 | 656.81 100 Payment:Cash | 04/01/2007 | 656.81 | 47.66 | 609.15 | 0.00 | 0.00 | 0.00 | 0.00 | 04/05/2007 |
| 03/07/2007 | 656.81 100 Payment:Cash | 03/01/2007 | 656.81 | 47.32 | 609.49 | 0.00 | 0.00 | 0.00 | 0.00 | 03/07/2007 |
| 02/07/2007 | 656.81 100 Payment:Cash | 02/01/2007 | 656.81 | 46.97 | 609.84 | 0.00 | 0.00 | 0.00 | 0.00 | 02/07/2007 |
| 12/28/2006 | 656.81 100 Payment:Cash | 01/01/2007 | 656.81 | 46.63 | 610.18 | 0.00 | 0.00 | 0.00 | 0.00 | 12/28/2006 |
| 11/29/2006 | 656.81 100 Payment:Cash | 12/01/2006 | 656.81 | 46.29 | 610.52 | 0.00 | 0.00 | 0.00 | 0.00 | 11/29/2006 |
| 10/31/2006 | 40.14 165 Fee Only - Cash | 12/01/2006 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/23/2006 |
| | 82,590.14 200 New Loan Setup | | 82,550.00 | 82,550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10/23/2006 |

FORM B104 (08/07)

RECEIVED

APR - 3 2013

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

2007 USBC, Central District of California

## ADVERSARY PROCEEDING COVER SHEET
### (Instructions on Page 2)

## ADVERSARY PROCEEDING NUMBER
(Court Use Only)

| PLAINTIFFS | DEFENDANTS |
|---|---|
| ALLANA BARONI | GREEN TREE SERVICING LLC |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Michael S. Riley (Admitted Pro Hac Vice)<br>242 Algiers Avenue, Fort Lauderdale, Florida 33308<br>Michael S. Riley Tel: (954) 401-3757 | |

**PARTY** (Check One Box Only)
- ☒ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor
- ☐ Other
- ☐ Trustee

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☒ Creditor
- ☐ Other
- ☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

FORM B104 (08/07), page 2                                           2007 USBC, Central District of California

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| ALLANA BARONI | 1:12-bk-10986-A |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| CENTRAL DISTRICT | SAN FERNANDO VALLEY | ALAN M. AHART |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| | | |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| | | |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

DATE

PRINT NAME OF ATTORNEY (OR PLAINTIFF)
MICHAEL S. RILEY

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.