1 | MARY KATE SULLIVAN (State Bar No. 180203)
mks@severson.com
2 | BERNARD J. KORNBERG (State Bar No. 252006)
bjk@severson.com
3 | SEVERSON & WERSON
A Professional Corporation
4 | One Embarcadero Center, Suite 2600
San Francisco, California 94111
5 | Telephone: (415) 398-3344
Facsimile: (415) 956-0439
6 |
Attorneys for Green Tree Servicing LLC Now
7 | Known As Ditech Financial LLC, Bank of
America, N.A., Bank of America Corporation,
8 | and The Bank of New York Mellon f/k/a The
Bank of New York as successor Indenture trustee
9 | to JPMorgan Chase Bank, National Association
for CWHEQ Revolving Home Equity Loan Trust,
10 | Series 2005-D

11 | UNITED STATES BANKRUPTCY COURT

12 | CENTRAL DISTRICT OF CALIFORNIA

13 | SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| 14  In re | Case No. 1:12-bk-10986-MB |
| 15  Allana Baroni, | Chapter 11 |
| 16          Debtor. | Adv No. 1:13-ap-01070-MB |
| 17 | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF ALLANA BARONI** |
| 18  Allana Baroni, | |
| 19          Plaintiff, | Date:     September 22, 2017 |
|     vs. | Time:     1:30 p.m. |
| 20 | Place:    Courtroom 303 |
|     Green Tree Servicing LLC, *et al.*, |          21041 Burbank Blvd |
| 21 |          Woodland Hills, CA 91367 |
|          Defendants. | |
| 22 | Judge:    Hon Martin R. Barash |

23

24

25

26

27

28

1      Defendants Green Tree Servicing LLC Now Known As Ditech Financial LLC ("Green

2  Tree"), Bank of America, N.A. ("BANA"), Bank of America Corporation ("BAC"), and The Bank

3  of New York Mellon f/k/a The Bank of New York as successor Indenture trustee to JPMorgan

4  Chase Bank, National Association for CWHEQ Revolving Home Equity Loan Trust, Series 2005-

5  D ("BONY") (collectively "Defendants")  hereby move this Court for summary judgment in

6  Defendants' favor and against plaintiff Allana Baroni ("Debtor"), pursuant to Fed. R. Civ. P. 56 as

7  incorporated by Bankruptcy Rule 7056, as there are no genuine issues of fact and Defendants are

8  entitled to judgment as a matter of law.

9      Plaintiffs' Third Amended Complaint (the "TAC") brings eight causes of action against

10  Defendants: (1) Declaratory Relief to Determine the Nature, Extent and Validity of Lien; (2)

11  Unjust Enrichment Through Quasi Contract; (3) Violation of 15 U.S.C. § 1692, et seq.; (4)

12  Violation of 12 U.S.C. § 2605; (5) Violation of California Business and Professions Code

13  § 172000, et seq.; (6) Accounting; (7) Violation of the Automatic Stay; and (8) Violation of

14  California Civil Code §§ 1709 and 1710.  Defendants seek summary judgment in their favor as to

15  each cause of action for the reasons stated in the accompanying memorandum of points and

16  authorities.

17      If for any reason the Court finds that summary judgment should not be granted, Defendants

18  requests that the Court issue an order pursuant to Fed. R. Civ. P. 56(g) determining what material

19  facts are not genuinely in dispute and, in addition, grant Defendants partial summary judgment as

20  to each cause of action where adjudication is appropriate.

21      This motion is based upon the following memorandum of points and authorities, the

22  accompanying notice of motion, request for judicial notice, and accompanying declarations with

23  supporting exhibits of Brianna May, Mark McCloskey, Stewart Derrick, and Bernard J. Kornberg,

24  all filed concurrently herewith, the pleadings and papers on file in this action and in the underlying

25  bankruptcy case, and upon such further evidence, both oral and documentary, as may be offered at

26  the time of the hearing.

27

28

DATED:  August 11, 2017     SEVERSON & WERSON
             A Professional Corporation

             By:   /s/ Bernard J. Kornberg
                  Bernard J. Kornberg

             Attorneys for Green Tree Servicing LLC Now Known
             As Ditech Financial LLC, Bank of America, N.A., Bank
             of America Corporation, and The Bank of New York
             Mellon f/k/a The Bank of New York as successor
             Indenture trustee to JPMorgan Chase Bank, National
             Association for CWHEQ Revolving Home Equity Loan
             Trust, Series 2005-D

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................... 1

II.  PERTINENT FACTS ................................................................................................... 2

III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ................................... 3

A.  Bank Of America Corporation Is Entitled To Summary Judgment As It Is A Stranger To Debtor's Loan And This Proceeding ........................................ 3

B.  The First Cause of Action for Declaratory Relief Fails as BONY Has the Right to Enforce the Note Through Its Loan Servicers ................................. 4

1.  Debtor Fails to State any Controversy as to BANA, BAC, or Green Tree .................................................................................................. 4

2.  Debtor Has the Burden of Showing the Claim Should Be Disallowed ......... 5

3.  When Claim 4-2 Was Filed, BONY Had a Right to Payment ..................... 5

(a)  BONY May Enforce the Note as a Transferee ................................. 6

(b)  BONY Also May Enforce the Note as the Assignee ........................ 8

4.  SLS, as Servicer of the Loan, Has the Right to Collect on the Note .......... 10

C.  The Second Cause of Action for Unjust Enrichment Fails as Debtor Admits to Defaulting on the Loan ............................................................... 11

1.  Debtor Made No Payments to Green Tree ................................................. 12

2.  Debtor's Allegation that Payments Were Made on Her Behalf Is Unsupported by the Evidence ................................................................. 12

D.  The Third Cause of Action for Violation of the FDCPA Fails as the Claim Is Barred and There Was No Unlawful Collection ................................. 13

1.  The Debt is a Commercial Debt ................................................................. 13

2.  It is Res Judicata That This Is a Commercial Debt .................................... 13

3.  Defendants BONY and BANA Are Not Debt Collectors ........................... 15

4.  There Was No Prohibited Collection Activity ........................................... 16

5.  Debtor Has No Damages ............................................................................ 17

E.  The Fourth Cause of Action for Violation of 12 U.S.C. § 2605 Fails as Defendants Properly Responded to the QWRs ...................................... 19

F.   The Fifth Cause of Action for Violation of Cal. Bus. & Prof. Code § 17200
     et seq. as the Predicate Claims Fail ........................................................................ 20

G.   The Sixth Cause of Action for Accounting as There Is No Fiduciary
     Relationship or Complicated Accounting ................................................................ 20

H.   The Seventh Cause of Action for Violation of the Automatic Stay Fails as
     There Was No Willful Stay Violation and No Damages ......................................... 21

     1.   Green Tree Is the Sole Party to the State Court Lawsuit ........................... 21

     2.   The Lawsuit Was Filed Before Debtor Filed for Bankruptcy .................... 21

     3.   Debtor Failed to Provide Notice of the Bankruptcy .................................. 22

     4.   Green Tree Had No Duty to Immediately Dismiss the Case, but
          Solely to Maintain the Status Quo ............................................................ 23

     5.   There Was No Violation of the Codebtor Stay .......................................... 23

     6.   Debtor Was Not Damaged ......................................................................... 24

I.   The Eighth Cause of Action for Violation of California Civil Code §§ 1709,
     1710 Fails as She Has Not Alleged Any Fraudulent Activity ................................. 24

IV.   CONCLUSION .................................................................................................................. 25

1

# TABLE OF AUTHORITIES

2

Page(s)

3

4

**FEDERAL CASES**

5

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015)..................................................................................11

6

7

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    135 S. Ct. 1293 (2015) ..........................................................................................14

8

*Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*,
    402 U.S. 313 (1971)...............................................................................................14

9

10

*Bloom v. I.C. Sys., Inc.*,
    972 F.2d 1067 (9th Cir. 1992)..........................................................................13, 15

11

12

*In re Chaussee*,
    399 B.R. 225 (B.A.P. 9th Cir. 2008) .....................................................................25

13

*In re Copeland*,
    441 B.R. 352 (Bankr. W.D. Wash. 2010) ..........................................................2, 22

14

15

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962) ...............................................................................................20

16

17

*Dechert v. Cadle Co.*,
    441 F.3d 474 (7th Cir. 2006)..................................................................................18

18

19

*Eskanos & Adler, P.C. v. Leetien*,
    309 F.3d 1210 (9th Cir. 2002).................................................................................22

20

*In re Fitch*,
    217 B.R. 286 (Bankr. S.D. Cal. 1998) ...................................................................23

21

22

*Henson v. Santander Consumer USA Inc.*,
    137 S. Ct. 1718 (2017) ...........................................................................................15

23

24

*ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*,
    27 F. Supp. 3d 494, 507 (S.D.N.Y. 2014)..............................................................10

25

*Jacobs v. CBS Broad., Inc.*,
    291 F.3d 1173 (9th Cir. 2002).................................................................................14

26

27

*Johnson v. Eaton*,
    80 F.3d 148 (5th Cir. 1996)....................................................................................18

28

*Kerr v. Wanderer & Wanderer*,
   211 F.R.D. 625 (D. Nev. 2002) ...................................................................15

*Khalsa v. Hali*,
   2014 WL 3883713 (N.D. Cal. Aug. 6, 2014) ...............................................4

*Klohs v. Wells Fargo Bank, N.A.*,
   901 F. Supp. 2d 1253 (D. Haw. 2012) .......................................................16

*Lundell v. Anchor Const. Specialists, Inc.*,
   223 F.3d 1035 (9th Cir. 2000) .....................................................................5

*Magee v. AllianceOne, Ltd.*,
   487 F. Supp. 2d 1024 (S.D. Ind. 2007) ......................................................16

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
   312 U.S. 270 (1941) .....................................................................................4

*In re McHenry*,
   179 B.R. 165 (B.A.P. 9th Cir. 1995) ..........................................................24

*Midland Funding, LLC v. Johnson*,
   137 S. Ct. 1407 (2017) ...............................................................................18

*Miller v. Fairchild Indus., Inc.*,
   797 F.2d 727 (9th Cir. 1986) .....................................................................15

*MSR Expl., Ltd. v. Meridian Oil, Inc.*,
   74 F.3d 910 (9th Cir. 1996) .......................................................................25

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,
   210 F.3d 1099 (9th Cir. 2000) ...................................................................18

*Omega Envtl. Inc. v. Valley Bank NA*,
   219 F.3d 984 (9th Cir. 2000) .......................................................................7

*In re Palmdale Hills Prop.*,
   LLC, 457 B.R. 29 (B.A.P. 9th Cir. 2011) ...................................................10

*In re Peters*,
   101 F.3d 618 (9th Cir. 1996) .....................................................................23

*In re Roberts*,
   175 B.R. 339 (B.A.P. 9th Cir. 1994) ..........................................................23

*Schlegel v. Wells Fargo Bank, NA*,
   720 F.3d 1204 (9th Cir. 2013) ...................................................................15

*Sellers v. Regents of Univ. of Cal.*,
   432 F.2d 493 (9th Cir. 1970) .......................................................................4

*Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*,
  655 F.2d 938, 942 (9th Cir. 1981 ...............................................................................4

*Taylor v. Sturgell*,
  553 U.S. 880, 128 S. Ct. 2161 (2008) .......................................................................14

*Tripati v. Henman*,
  857 F.2d 1366 (9th Cir. 1988)...................................................................................15

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004)..............................................................................13, 15

*United States v. Bestfoods*,
  524 U.S. 51, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998) ............................................3

*In re Veal*,
  450 B.R. 897 (B.A.P. 9th Cir. 2011) .......................................................................10

*In re Wagner*,
  74 B.R. 898, 905 (Bankr. E.D. Pa. 1987)................................................................24

*Walls v. Wells Fargo Bank, N.A.*,
  276 F.3d 502 (9th Cir. 2002)....................................................................................18

*Yanfag v. Cyfred, Ltd.*,
  2009 Guam 16 (Guam Dec. 28, 2009) ........................................................................7

**STATE CASES**

*Am. First Fed., Inc. v. Gordon*,
  2015 WL 3798210 (Conn. Super. Ct. May 26, 2015)..................................................6

*Anderson v. Deloitte & Touche*,
  56 Cal. App. 4th 1468 (1997).....................................................................................25

*Easton Bus. Opp. v. Town Executive Suites*,
  126 Nev. Adv. Op. 13, 230 P.3d 827 (2010)...............................................................7

*Fleet v. Bank of Am. N.A.*,
  229 Cal. App. 4th 1403 (2014)..................................................................................20

*Fontainebleau Hotel Corp. v. James Talcott, Inc.*,
  164 So. 2d 264 (Fla. Dist. Ct. App. 1964)................................................................10

*Haydon v. Nicoletti*,
  18 Nev. 290, 3 P. 473 (1884) ..................................................................................1, 7

*Kaw Valley State Bank & Trust v. Commercial Bank of Liberty, N.A.*,
  567 S.W.2d 710 (Mo. Ct. App. 1978) .......................................................................10

*Kohn v. Sacramento Elec. Gas & Ry. Co.*,
    168 Cal. 1 (1914) ..................................................................................................7, 8

*McFarland v. Brier*,
    850 A.2d 965 (R.I. 2004) ...........................................................................................7

*Mehlhoff v. Pioneer State Bank*,
    124 N.W.2d 401 (N.D. 1963) ..................................................................................10

*Pac. Maxon, Inc. v. Wilson*,
    96 Nev. 867, 619 P.2d 816 (1980) ...........................................................................25

*Ranson v. Sherwood*,
    26 Conn. 437 (1857) ..................................................................................................8

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal.App.4th 221, 166 Cal.Rptr.3d 864 (2014) ..................................................11

*Small v. Fritz Companies, Inc.*,
    30 Cal. 4th 167 (2003) ..............................................................................................24

*Winnemucca State Bank & Trust Co. v. Corbeil*,
    42 Nev. 378, 178 P. 23 (1919) ...................................................................................8

*Yin v. Soc'y Nat. Bank Indiana*,
    665 N.E.2d 58 (Ind. Ct. App. 1996) ...........................................................................7

**FEDERAL STATUTES**

11 U.S.C.
    § 101(5)(A) .................................................................................................................5
    § 362(a) .....................................................................................................................21
    § 1301(a) ...................................................................................................................23
    § 1301(a)(2) ..............................................................................................................23
    § 2605(d) ..................................................................................................................19

12 U.S.C.
    § 2605 ...................................................................................................................3, 19
    § 2605(d)(2) ..............................................................................................................19

15 U.S.C.
    § 1692 .......................................................................................................................16
    § 1692, et seq. ...................................................................................................3, 13, 14
    § 1692a(5) .................................................................................................................13
    § 1692a(6) .................................................................................................................15
    § 1692a(6)(F) ............................................................................................................16
    § 1692k(a)(3) ............................................................................................................18
    § 1692k(d) .................................................................................................................17

28 U.S.C.
    § 2201 .................................................................................................................4

11 U.S.C.A.
    § 362(k) ............................................................................................................22

**STATE STATUTES**

California Business and Professions Code
    § 17200, et seq.............................................................................................3, 20

California Civil Code
    §§ 1709 and 1710 ........................................................................................3, 24

Nev. Rev. Stat. Ann.
    § 104.3203(2) .....................................................................................................6
    § 104.3306 ..........................................................................................................6
    § 104.9102(tt) .....................................................................................................6
    § 104.9201 ..........................................................................................................9
    § 104.9607(c) ...............................................................................................1, 10
    § 104.9607 cmt 6 ..............................................................................................10

**RULES**

Federal Rules of Bankruptcy Procedure
    Rule 3001 ......................................................................................................5, 10
    Rule 3001(c) ........................................................................................................5
    Rule 3001(d) ........................................................................................................5
    Rule 3001(f) .........................................................................................................5

Federal Rules of Civil Procedure
    Rule 53(b) ..........................................................................................................20

**OTHER AUTHORITIES**

American Bankers Association, *The Trustee's Role in Asset-Backed Securities*
    (November 9, 2010) .............................................................................................8

Miller & Starr, Cal. Real Est. § 13:43 (4th ed.) ......................................................7, 8

Restatement (Second) of Judgments § 27 (1980)........................................................14

Restatement (Second) of Contracts § 324 (1981) .......................................................7

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is one of many lawsuits by Debtor challenging the identity of the claimants on loans of her multiple luxury properties.  The gravamen of Debtor's lawsuit is that she does not know to pay on her loan due to various entities having laid claim on her debt.  TAC at ¶ 41.  In pursuit of her noble goal of finding her true creditor, she has brought an objection to claim 4-2 and a host of derivative causes of action with it.

Unfortunately for Debtor, nothing so interesting is afoot.  The loan was originated by Countrywide Home Loans, Inc. ("CHL") in 2005.  Shortly thereafter, as part of a standard loan securitization, it was transferred to defendant The Bank of New York Mellon f/k/a The Bank of New York as successor Indenture trustee to JPMorgan Chase Bank, National Association for CWHEQ Revolving Home Equity Loan Trust, Series 2005-D ("BONY") as an indenture trustee.  BONY then sought to collect on payments owed to it under the note through servicers and subservices.  These servicers were, in order, Bank of America, N.A. ("BANA"), defendant Green Tree Servicing LLC Now Known As Ditech Financial LLC ("Green Tree"), then Specialized Loan Servicing LLC ("SLS").  Each time a servicing transfer occurred, the servicer sent a servicing transfer letter to Debtor.

It is undisputed that BONY was transferred the original, indorsed in blank note.  Defendant's Uncontroverted Material Fact ("UMF") #23, 50.  While the note is not a negotiable instrument under the UCC, it is of no matter.  Under the common law, a non-negotiable instrument was transferable by delivery.  *Haydon v. Nicoletti*, 18 Nev. 290, 3 P. 473, 478 (1884).  The UCC does not abrogate this rule and BONY may enforce the note through its possession by delivery.  Alternatively, BONY may also enforce the note as pledgee of the note.  Nev. Rev. Stat. Ann. § 104.9607(c).

The claim was also properly filed by Green Tree.  Green Tree was empowered to file a proof of claim as servicer of the loan.  UMF #18-19.  SLS, the current claimant by transfer, was similarly empowered to transfer the claim when it took over servicing of the loan.  UMF #20-21.

Finally, Debtor's complaint also raises seven other causes of action.  These causes of

1   action are generally derivative of Debtor's allegation that none of Defendants can enforce the loan

2   and should be dismissed on those grounds, along with independent grounds as set forth below.

3        The sole exception is a cause of action for violation of the automatic stay which arises out

4   of a pre-petition collection lawsuit filed by Green Tree as to Debtor.  This cause of action fails as

5   Green Tree had no notice of Debtor's bankruptcy filing.  UMF #31-34.  When Green Tree learned

6   of the bankruptcy filing, Green Tree filed a notice of stay and then dismissed the proceeding.

7   UMF #38, 40.  As Green Tree had no notice of the bankruptcy, and acted appropriately in staying

8   the case when it learned of the stay, there was no stay violation.  *In re Copeland*, 441 B.R. 352,

9   364 (Bankr. W.D. Wash. 2010).   Further, Debtor has shown no damages for the alleged stay

10   violation.

11        For all these reasons, the Court should enter judgment in favor of Defendants as to all

12   causes of action.

## II.  PERTINENT FACTS

14        Debtor and her husband, James Baroni signed a note dated May 19, 2005 in the form of a

15   Home Equity Credit Line Agreement and Disclosure Statement (the "HELOC").  UMF #1.

16   Concurrently, Debtor and her husband executed a junior position deed of trust to secure the

17   HELOC against the property located at 2240 Village Walk Dr., Unit 2311, Henderson, NV 89052-

18   7800 (the "Property").  UMF #2.  Debtor uses the Property as a rental property.  UMF # 3.  Both

19   the HELOC and the deed of trust identified the lender as CHL.  UMF #1.  The HELOC was

20   indorsed in blank by CHL.  UMF #4.

21        The note was then transferred to BONY in its role of indenture trustee.  The specific steps

22   taken to accomplish this transfer, along with the transfer of master servicing rights, are set forth in

23   detail on pp. 6-10, below.

24        On June 1, 2010, servicing of the loan was transferred from BANA to Green Tree.  UMF

25   #18.

26        On February 1, 2012, Debtor filed for bankruptcy.  UMF #31.  On February 1, 2013, Green

27   Tree filed Claim 4-2 representing its claim as servicer of the loan.  UMF #37.

28        On April 15, 2013, Debtor's second amended plan was confirmed.  Order Confirming

Plan, Bky. Dkt. # 423.  Pursuant to the plan, Claim 4-2 is to be treated as an entirely unsecured junior lien.  Second Amended Plan, p.31-32, Bky. Dkt. #376.   The plan further provides that payments on the claim will be held by a disbursing agent pending litigation on the claim.  Second Amended Plan, p.31-32, Bky. Dkt. #376.

On December 8, 2014, servicing of the loan was transferred from Green Tree to SLS.  UMF #19.

On May 15, 2015, Claim 4-2 was transferred from Green Tree to SLS as servicer for BONY.  UMF #46.

### III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

Debtor's Third Amended Complaint brings eight causes of action against Defendants: (1) Declaratory Relief to Determine the Nature, Extent and Validity of Lien; (2) Unjust Enrichment Through Quasi Contract; (3) Violation of 15 U.S.C. § 1692, et seq.; (4) Violation of 12 U.S.C. § 2605; (5) Violation of California Business and Professions Code § 17200, et seq.; (6) Accounting; (7) Violation of the Automatic Stay; and (8) Violation of California Civil Code §§ 1709 and 1710.  Defendants are entitled to summary judgment as to each claim.

**A.      Bank Of America Corporation Is Entitled To Summary Judgment As It Is A Stranger To Debtor's Loan And This Proceeding**

Debtor has, for reasons unknown to Defendants, named defendant Bank of America Corporation ("BAC") as a defendant in this action.  BAC is the parent company of BANA.  UMF #49.  Beyond that, BAC does not have, and never has had, any interest in the HELOC.  UMF #49.  Debtor has not alleged any facts showing that BAC has claimed any interest in the HELOC.  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876, 1884, 141 L. Ed. 2d 43 (1998) (internal quotations and citations omitted).  Accordingly, summary judgment should be entered in BAC's favor on that basis alone.

**B.** **The First Cause of Action for Declaratory Relief Fails as BONY Has the Right to Enforce the Note Through Its Loan Servicers**

For this cause of action, Baroni seeks declaratory relief to disallow claim 4-2.  . Declaratory relief is allowed when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); 28 U.S.C. § 2201.  Debtor alleged that there a controversy regarding whether Defendants have a "legal, equitable, or pecuniary interest in the Loan."  TAC at ¶ 54.

**1.** **Debtor Fails to State any Controversy as to BANA, BAC, or Green Tree**

As an initial matter, judgment should be granted as to BANA, BAC, and Green Tree as there is no controversy as to them.  SLS took over servicing of the HELOC on December 8, 2014. UMF #20.  On May 15, 2015, Claim 4-2 was transferred from Green Tree to SLS as servicer for BONY.  UMF #5.  Accordingly, Green Tree and BANA, as prior servicers, no longer have any interest in the HELOC.  BAC, as stated above, has never had any interest in the loan.  UMF #49.

BANA, BAC, and Green Tree expressly disclaim having any present interest in the loan. UMF#18, 20, 29.  As no defendant except for BONY claims any present interest in the loan, there is no present controversy between BANA, BAC, or Green Tree and Debtor that requires the Court to "determine the rights and obligations of the Parties . . . to identify her true and correct creditor." TAC at ¶ 57.

Further, Debtor cannot sustain this cause of action by alleging past controversies.  Because of the requirement of "sufficient immediacy," "the 'controversy' must exist at the time of the hearing as to the availability of declaratory relief and that determination is entirely independent of any controversy that may have existed in the past." *Sellers v. Regents of Univ. of Cal.*, 432 F.2d 493, 499–500 (9th Cir. 1970).  "[T]here is no basis for declaratory relief where only past wrongs are involved. *Khalsa v. Hali*, 2014 WL 3883713, at *2 at n.18 (N.D. Cal. Aug. 6, 2014). Accordingly, judgment is appropriate as to BANA, BAC, and Green Tree on this independent ground.

4

### 2.    Debtor Has the Burden of Showing the Claim Should Be Disallowed

Debtor's complaint is premised on her allegation that BONY's claim should be disallowed because BONY has not proven it has a right to enforce the claim. Debtor is wrong as to the burden of proof. Under the bankruptcy rules, BONY's claim has prima facie validity.

Bankruptcy Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Bankruptcy Rule 3001 imposes two, and only two, requirements on the filing of a proof of claim. If the claim is based on a writing, a copy of the writing must be filed with the proof of claim. Fed. R. Bankr. P. 3001(c)(1). If the claim is secured, evidence of the security interest must be provided. Fed. R. Bankr. P. 3001(d).

Green Tree met Rule 3001's requirements when it filed Claim 4-2. The claim was based on Debtor's promissory note which was attached to the proof of claim. UMF #37. Also attached to the proof of claim was the deed of trust, the evidence of the security interest. UMF #37. Accordingly, Claim 4-2 has prima facie validity.

This prima facie validity puts the burden on Debtor to show that the claim should be disallowed. "Upon objection, the proof of claim provides some evidence as to its validity and amount and is strong enough to carry over a mere formal objection without more." *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (internal quotations omitted). "To defeat the claim, the objector must come forward with sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Id.* (internal quotations omitted).

Accordingly, in moving for summary judgment, Defendants only have the burden of establishing that it filed a proof of claim in compliance with Rule 3001. As they have done so, Debtor now has the burden of showing that the claim is invalid. As Debtor cannot do so, judgment on this issue should be granted in favor of Defendants.

### 3.    When Claim 4-2 Was Filed, BONY Had a Right to Payment

A claim is defined by the bankruptcy code, in part, as a "right to payment." 11 U.S.C. § 101(5)(A). As noted by this Court, "there are multiple theories under which BONYM and other

1  Defendants may prove they have a right to enforce the HELOC and the Green Tree POC –

2  irrespective of whether BONYM owns" the HELOC.  Order Granting Summary Judgment at 8:3-

3  5, Adv. Dkt. # 205.  The undisputed facts show that BONY, from the time Debtor filed bankruptcy

4  onwards, has had a right to payment on the note as both transferee of the note and through written

5  assignment of the note.  SLS may thus act as claimant and enforce the note as servicer of the loan.

6  **(a)      BONY May Enforce the Note as a Transferee**

7  In ruling on Debtor's motion for summary judgment, this Court determined that "that the

8  HELOC is not a negotiable instrument."  Order Granting Summary Judgment at 6:10-13, Adv.

9  Dkt. # 205.  While BONY may not be able to enforce the note as negotiable instrument under

10  Article III of the UCC,[1] "the determination that the notes are not negotiable instruments does not

11  end the inquiry."  *Am. First Fed., Inc. v. Gordon*, 2015 WL 3798210, at *10 (Conn. Super. Ct.

12  May 26, 2015).

13  The UCC makes clear that non-negotiable note may be transferred by delivery by defining

14  an "instrument" as "a negotiable instrument *or any other writing* that evidences a right to the

15  payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that

16  in ordinary course of business is transferred by delivery with any necessary endorsement or

17  assignment."  Nev. Rev. Stat. Ann. § 104.9102(tt) (emphasis added).  The purpose of the

18  negotiable instrument clause of the UCC is to allow a holder to enforce the instrument "free of the

19  claim to an instrument."  Nev. Rev. Stat. Ann. § 104.3306.  If an instrument is non-negotiable, it

20  still assigned by transfer alone, though such transfer does not provide a holder in due course

21  defense.  Nev. Rev. Stat. Ann. § 104.3203(2) ("Transfer of an instrument, whether or not the

22  transfer is a negotiation, vests in the transferee any right of the transferor to enforce the

23  instrument, . . . but the transferee cannot acquire rights of a holder in due course by a transfer").

24  If a note is not a negotiable instrument under the UCC, then the Court looks to the

25  _____

26  [1] In ruling on Debtor's motion for summary judgment, the Court explicitly did not decide whether
"the HELOC qualifies as a bearer instrument at common law, as opposed to under Article 3 of the
27  Nevada Uniform Commercial Code."  Order Granting Summary Judgment at p.6 n.3, Adv. Dkt.
# 205.  Such a determination is appropriate for resolution of this motion.

28

1    common law to determine if the note is of a type that may be transferred by delivery.  *Haydon*, 18

2    Nev. 290, 3 P. at 478; *Kohn v. Sacramento Elec. Gas & Ry. Co.*, 168 Cal. 1, 7 (1914) ("the old

3    common law rule with reference to assignability of things in action has long since been abrogated

4    and has been succeeded by one more liberal which, while it permits securities to pass from hand to

5    hand in business transactions does not make them negotiable to the extent of cutting off the

6    equities of their makers"); *Yin v. Soc'y Nat. Bank Indiana*, 665 N.E.2d 58, 62 (Ind. Ct. App. 1996)

7    ("[n]on-negotiable agreements are governed by Indiana common law"); see also *McFarland v.

8    Brier*, 850 A.2d 965, 975 (R.I. 2004); *Yanfag v. Cyfred, Ltd.*, 2009 Guam 16 n.4 (Guam Dec. 28,

9    2009).  Under the common law, a contractual right may be freely assigned unless contractual

10   documents expressly forbid assignment.  *Easton Bus. Opp. v. Town Executive Suites*, 126 Nev.

11   Adv. Op. 13, 230 P.3d 827, 830 (2010).  "Absent some additional contract- or statute-based

12   requirement, no particular formality in expressing that intention needs to be followed."  *Id*.  The

13   obligee need only "manifest an intention to transfer the right to another person without further

14   action."  Restatement (Second) of Contracts § 324 (1981).

15          In ruling of Debtor's motion for summary judgment, this Court found that Nevada law

16   controls as to any issue relating to enforcement of the HELOC due to a choice of law clause.[2]

17   Order on Debtor's Motion for Summary Judgment at pp.4:17-5:22, Adv. Dkt. #205; See also UMF

18   5.  Under Nevada law, a note, negotiable or not, is a type of instrument that is transferred by

19   delivery.   *Haydon*, 18 Nev. 290, 3 P. at 478 ("A promissory note, like any other personal

20   property, can be transferred by mere delivery so as to pass the title, and the right to sue in the

21   name of the holder when a note is payable to order, and is found in the hands of a person not the

22   payee, without the indorsement of the payee").  This rule applies to negotiable and non-negotiable

23   instruments.  *Id*.  ("a note not negotiable, *transferred by delivery*") (emphasis added).[3]

24

25   [2]      It should be noted that California law is identical as to the issues raised in this motion.
     See, Miller & Starr, Cal. Real Estate § 13:43 (4th ed.).
26

27   [3]      See also *Omega Envtl. Inc. v. Valley Bank NA*, 219 F.3d 984, 986 (9th Cir. 2000) ("The
     bankruptcy court's finding that the CD in this case is a type of document which is in the ordinary
28   course of business in Virginia treated as transferable by delivery with any necessary endorsement
     (footnote continued)

Here, it is undisputed that the HELOC was transferred to BONY.  The terms of the

HELOC allow it to be transferred or assigned to a third-party without permission of the Debtor.

UMF #6.  The HELOC was physically transferred to BONY and is currently being held by

counsel for BONY as BONY's bailee.  UMF #22, 50.[4]  Finally, the HELOC has been endorsed in

blank.  UMF #4.   BONY has more than met its burden of establishing that it is the transferee of

the note by delivery.  Under Nevada law, no more is required to allow BONY to enforce the

HELOC.

### (b)      BONY Also May Enforce the Note as the Assignee

Alternately, BONY may enforce the HELOC through a chain of written assignments of the

HELOC from CHL to BONY.  This chain of assignment can be found in the written securitization

documents for the BONY Trust.  See American Bankers Association, *The Trustee's Role in Asset-

Backed Securities* at p.5 (November 9, 2010)[5] ("A pooling and servicing agreement, trust

indenture or similar agreement forms the basic document which sets forth the relationship among

the parties and the assets").

_____

or assignment is not clearly erroneous"); Miller & Starr, Cal. Real Est. § 13:43 (4th ed.) ("A loan
of money, as defined in the Civil Code includes an obligation arising from a written contract for
the payment of money and may be transferred by 'indorsement' even if the obligation is non-
negotiable"); *Ranson v. Sherwood*, 26 Conn. 437, 437 (1857) ("a blank indorsement of a note not
negotiable, implies, prima facie, a contract on the part of the indorser that the note is due and
payable according to its tenor, that the maker shall be of ability to pay it when it comes to
maturity, and that it is collectible by the use of due diligence on the part of the holder:-and a blank
indorsement of a negotiable note, for the benefit of the payee, is attended with the same legal
incidents as a blank indorsement of a note not negotiable"); *Winnemucca State Bank & Trust Co.
v. Corbeil*, 42 Nev. 378, 178 P. 23, 25 (1919) ("it cannot be successfully urged that a party holding
a nonnegotiable note, having the indorsement and delivery by the payee to him of the note, cannot
maintain an action for its payment"); *Kohn v. Sacramento Elec. Gas & Ry. Co.,* 168 Cal. 1, 7
(1914).

[4] Once the litigation ends, the HELOC will be held by Recontrust Company, N.A., as successor to
Treasury Bank, National Association, as agent, custodian, and bailee for the BONY Indenture
Trust.  UMF # 23.

[5] This paper, which sets forth the historical role of the indenture trustee and the creation of modern
securitized trusts which utilize an indenture trustee, is available at
https://www.aba.com/aba/documents/press/RoleoftheTrusteeinAsset-
BackedSecuritiesJuly2010.pdf.  The securitization documents in this case do not vary far from the
securitized trusts described in this article.

1    On August 24, 2005, CWHEQ, Inc. ("CWHEQ") and the Wilmington Trust Company

2  entered into a trust agreement creating the CWHEQ Revolving Home Equity Loan Trust, Series

3  2005-C (the "CWHEQ Trust").  UMF #7.  As part of its operating documents, the CWHEQ Trust

4  was authorized to issue notes pursuant to an indenture (the "Indenture Notes").  UMF #8.

5    In order to fund payment of the Indenture Notes, CWHEQ entered into a purchase

6  agreement with CHL to buy certain loans to as set forth in a Mortgage Loan Schedule

7  ("CWHEQ").  UMF #9.  Debtor's loan was one of these loans.  UMF #9.  Upon purchasing the

8  Indenture Notes, CWHEQ transferred "to the [CWHEQ Trust] without recourse . . . all of its

9  rights, title, and interest in (i) each Mortgage Loan."  UMF #10.  Accordingly, the CWHEQ Trust

10  had and has title to Debtor's loan.

11    While title remains with the CWHEQ Trust, BONY has the right to enforce the HELOC as

12  pledgee.  The CWHEQ Trust and JPMorgan Chase Bank, N.A. ("JP Morgan") entered into an

13  indenture.  Pursuant to the indenture, JPMorgan would act as indenture trustee (the "Indenture

14  Trustee") for the Indenture Notes.  UMF #11.  In order to collect on the payments owed on the

15  mortgage loans, CHL was designated as master servicer.  UMF #14.  As part of its duties, CHL

16  was to remit all payments it collected on the mortgage loans to the Indenture Trustee.  UMF #15.

17  These payments would then be held in a payment account by the Indenture Trustee to fund the

18  payments owed under the notes.  UMF #15.

19    In order to secure payment of the notes, the CWHEQ Trust pledged all of its assets,

20  including Debtor's loan, to the Indenture Trustee.  UMF #12; Indenture at pp.1-3, Ex. E to

21  McCloskey Decl. ("The Issuer Grants to the Indenture Trustee . . . all of the Issuer's interest

22  existing now or in the future").  This pledge further provides that "[the Trust] agrees that the

23  foregoing Grants are intended to grant in favor of the Indenture Trustee, for the respective benefit

24  of the Holders of the Class 1-A Notes and Class 2-A Notes and for the benefit Credit Enhancer, a

25  first priority, continuing lien and security interest in all of the Issuer's personal property."

26  Indenture at p.3, Ex. E to McCloskey Decl.  BONY thus has a security interest in the HELOC

27  through the Indenture's granting clause.  Nev. Rev. Stat. Ann. § 104.9201 ("a security agreement

28  is effective according to its terms between the parties").

1      On October 1, 2006, JPMorgan resigned as Indenture Trustee and BONY assumed the

2  rule of Indenture Trustee from JPMorgan Chase Bank, National Association.  UMF #13.

3      BONY thus has both possession of the HELOC and a security interest in the HELOC.

4  Under the UCC, "a secured party [m]ay enforce the obligations of an account debtor *or other*

5  *person obligated on collateral* and exercise the rights of the debtor . . . *to make payment or*

6  *otherwise render performance to the debtor.*"  Nev. Rev. Stat. Ann. § 104.9607(c) (emphasis

7  added).   "This section permits a secured party to collect and enforce obligations included in

8  collateral in its capacity as a secured party. It is not necessary for a secured party first to become

9  the owner of the collateral pursuant to a disposition or acceptance." Nev. Rev. Stat. Ann. §

10  104.9607 cmt 6;  see also *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d

11  494, 507 (S.D.N.Y. 2014).[6]    BONY may also enforce the HELOC as pledgee.

12      **4.      SLS, as Servicer of the Loan, Has the Right to Collect on the Note**

13      Claim 4-2 was filed by Green Tree servicing on February 1, 2013.  UMF #37.  On May 15,

14  2015, Claim 4-2 was transferred from Green Tree to SLS as servicer for BONY.  UMF #45.  Both

15  entities were entitled to enforce the loan for these respective time periods.

16      A servicer may file a proof of claim so long as they are granted authority to act on behalf

17  of the party entitled to enforce the note.   *See In re Veal*, 450 B.R. 897, 922 (B.A.P. 9th Cir. 2011);

18  *In re Palmdale Hills Prop.*, LLC, 457 B.R. 29, 48 (B.A.P. 9th Cir. 2011) ("an authorized agent

19  may file a proof of claim"); Fed. R. Bankr. P. 3001 ("A proof of claim shall be executed by the

20  creditor or the creditor's authorized agent").

21

22  [6]      See *Fontainebleau Hotel Corp. v. James Talcott, Inc.*, 164 So. 2d 264, 265 (Fla. Dist. Ct.

23  App. 1964) ("When a promissory note which has been pledged becomes due and in default in the
hands of the pledgee the latter may maintain an action thereon irrespective of the status of the

24  obligation for which the note was pledged"); *Mehlhoff v. Pioneer State Bank*, 124 N.W.2d 401,
405 (N.D. 1963) ("[w]hen the Bank became the pledgee of Ed Lakoduk's note, it had the right to

25  enforce payment of the note without seeking to enforce its principal obligation against Sam
Lakoduk, the pledgor"); *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty, N.A.*, 567

26  S.W.2d 710, 712 (Mo. Ct. App. 1978) ("[t]he pledgee's interest in the certificate of deposit is, to
the extent of the pledgor's indebtedness, identical with that of the pledgor. Upon default, the

27  pledgee has the right to enforce the pledge when it becomes due").

28

Here, such authority was provided.  When the loan was securitized, CHL was named the master servicer of the loan.  UMF #14..  As part of its duties, CHL was designated broad powers to effect the collection of the debts.  UMF #15; Sale and Servicing Agreement, § 3.02, Ex. B to McCloskey Decl. ("The Master Servicer shall make reasonable efforts to collect all payments called for under the Mortgage Loans").  The Master Servicer was also given full power to delegate any of it duties to a subservicer.  UMF #16.

CHL did just that.  On December 11, 2009, CHL retained Green Tree as servicer of the loan.  UMF #18.  As part of that agreement, CHL provided Green Tree with a power of attorney allowing it to allow it to file any paper necessary on behalf of the loan.  UMF #18.  Accordingly, Green Tree was authorized to file a proof of claim on behalf of BONY.

More importantly, the claim is valid at this time.  On May 15, 2015, the Claim 4-2 was transferred to SLS.  UMF #45.  SLS is a proper party to enforce the claim.  On February 1, 2013, SLS assumed all rights and duties as master servicer from CHL.  UMF #19.  While SLS initially continued to retain Green Tree as servicer, on December 8, 2014, servicing of the loan was transferred from Green Tree to SLS.  UMF #20.  SLS thus had the right to file the transfer of claim as part of its broad grant of authority provided by the Sale and Servicing Agreement.

Further, as additional proof of authority, on April 7, 2015, BONY provided SLS a power of attorney granting it authority for "the preparation and execution of such other documents and performances of such other actions as may be necessary, including the defense of any claims related to the Mortgage."  UMF #21.  This power of attorney explicitly includes the loans held by the Indenture Trust.  UMF #21.   Accordingly, SLS is the proper claimant.

**C.     The Second Cause of Action for Unjust Enrichment Fails as Debtor Admits to Defaulting on the Loan**

Debtor's next cause of action is for unjust enrichment.  "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 166 Cal.Rptr.3d 864, 872 (2014)).

### 1.    Debtor Made No Payments to Green Tree

As an initial note, this claim fails as to Green Tree as Debtor made no payments when Green Tree was servicer of the loan.  Debtor has not made a payment on the loan since before June 1, 2010.  UMF #24; Baroni Depo. at p.79:3-6, <u>Ex. A</u> to Kornberg.[7]  Green Tree took over servicing of the loan on June 1, 2010.  UMF #18.   Debtor's plan does not provide for payments to be made on the claim until after this litigation is resolved.  Second Amended Plan, p.31-32, Bky. Dkt. #376.  Accordingly, even if Debtor's allegations were correct, she never made any payments directly to Green Tree and thus cannot receive any restitution from Green Tree.

### 2.    Debtor's Allegation that Payments Were Made on Her Behalf Is Unsupported by the Evidence

Debtor is not entitled to restitution.  Debtor first alleges that she is entitled to restitution as Defendants are not proper claimants to Claim 4-2.  TAC at ¶ 61.  As set forth above, this argument fails as Claim 4-2 is properly allowed.

Debtor also alleges that she is entitled to restitution as the "Financial Security Assurance, Inc., Policy paid the Loan in full."  TAC at ¶ 62.  The alleged Financial Guaranty Insurance Policy is attached as <u>Exhibit 10</u> of the TAC (the "Policy").  Even if Debtor properly authenticates the Policy in opposition to this motion, nothing in it provides for payment of Debtor's obligation on the HELOC.

The policy provides that it guarantees "the full and complete payment by the Obligor of Scheduled Payments of principal of, and interest on, the Obligations."  Policy at p.1.  The "Obligor" is defined as the CWHEQ Trust, and the obligations are defined as the Indenture Notes. Policy at p.1.  Accordingly, while Debtor's intentional default may have resulted in a policy claim due to a shortfall in funds for payments on the Indenture Notes, none of those payments were used

---

[7]    Q: "So by 2009, you'd stopped – you started putting the money aside in a special reserve account?
A: "Yes."
Baroni Depo. at p.79:3-6,

1    to pay her obligation on the HELOC.[8]  Policy at p.7.

2         In fact, the opposite is true.  Under the policy, the insurer would be subrogated to the right

3    of the noteholders of the Indentures Notes to recover any payments made by the insurer to cover

4    the policy.  Policy at p.1.  Therefore, even if any missed payments by Baroni resulted in an

5    insurance claim, the result would be that the insurer, rather than the noteholders of the Indenture

6    Notes, would be entitled to eventual payments.  Accordingly, even if a claim was paid on the

7    Policy, it did not affect the balance of the HELOC.

8    **D.    The Third Cause of Action for Violation of the FDCPA Fails as the Claim Is Barred
         and There Was No Unlawful Collection**
9

10        Debtor's third cause of action alleges that Defendants violated 15 U.S.C. § 1692, *et seq.*,

11   otherwise known as the Fair Debt Collection Practices Act (the "FDCPA").  TAC at ¶ 64.

12        **1.    The Debt is a Commercial Debt**

13        The FDCPA only covers debts that were incurred for "for personal, family, or household

14   purposes."  15 U.S.C.§ 1692a(5).  Accordingly, commercial debts are not covered by the FDCPA.

15   *Turner v. Cook*, 362 F.3d 1219, 1228 (9th Cir. 2004); *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067,

16   1068 (9th Cir. 1992).  Pursuant to Debtor's plan and schedules, the Property is a rental property,

17   not her home.  Second Amended Plan at p.7, Bky. Dkt.# 376.  Therefore, this is a commercial debt

18   and the FDCPA does not apply.

19        **2.    It is Res Judicata That This Is a Commercial Debt**

20        Debtor already litigated the issue of whether this is a commercial or consumer debt under

21   the FDCPA  in the suit of *Baroni v. Wells Fargo Bank, N.A, as Trustee, etc.* (the "Wells Fargo

22   Suit").  She may not relitigate the issue under the doctrine of defensive collateral estoppel.

23        Collateral estoppel, otherwise known as issue preclusion, "bars successive litigation of an

24   _____

25   [8]     Debtor's failure to pay the HELOC would not necessarily trigger a claim.  While the funds

26   to pay the notes issued by the Indenture Trust come from the payments due under the mortgage
     loans, a single default in an underlying mortgage loan is not the triggering event for a claim.

27   Instead, a claim may only be made if "[t]he sum of all amounts on deposit . . . will be less than the
     aggregate amount of Schedule Payments."

28

issue of fact or law actually litigated and resolved in a valid court determination essential to the

prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553

U.S. 880, 892, 128 S. Ct. 2161, 2171 (2008) (internal quotations omitted).  The basis for this

doctrine is that "[a]llowing the same issue to be decided more than once wastes litigants' resources

and adjudicators' time, and it encourages parties who lose before one tribunal to shop around for

another." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1298 (2015).

Collateral estoppel applies when "[w]hen an issue of fact or law is actually litigated and

determined by a valid and final judgment, and the determination is essential to the judgment, the

determination is conclusive in a subsequent action between the parties, whether on the same or a

different claim." *B & B Hardware*, 135 S. Ct. at 1303 (quoting Restatement (Second) of

Judgments § 27, p. 250 (1980)).  Unlike claim preclusion "a nonparty to the earlier proceeding

may invoke the doctrine against a party who is bound by the proceeding." *Jacobs v. CBS Broad.,

Inc.*, 291 F.3d 1173, 1176 at n.2 (9th Cir. 2002); *see also Blonder-Tongue Labs., Inc. v. Univ. of

Illinois Found.*, 402 U.S. 313, 348 (1971).

All the elements of collateral estoppel apply.  First, the issue was present in the Wells

Fargo Suit.  In the Wells Fargo Suit, Debtor brought an FDCPA claim regarding Wells Fargo's

attempts to enforce its note and first position deed of trust against the Property.  UMF #46.  The

loan in the Wells Fargo Suit was taken out on the same day as the HELOC.  UMF #46.

Accordingly, the issue of whether the Property was purchased for commercial or consumer

purposes was at issue in the prior case.

Second, the issue was actually litigated to final judgment.  "When an issue is properly

raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the

issue is actually litigated."   Restatement (Second) of Judgments § 27.  This Court granted

judgment in favor of Wells Fargo as to the FDCPA claim after finding and concluding that "Wells

Fargo has shown that it is not a debt collector, as defined by 15 U.S.C. § 1692, Et Seq., and is in

possession of the Note, therefore, it is entitled to enforce the terms of the Note and is owed the

amounts due thereon. Further, FDCPA only applies to debts that are primarily for personal, family

or household purposes."  UMF #47.  While Debtor has appealed this judgment to the Ninth

14

1  Circuit, a federal judgment does not lose its res judicata effect due to an appeal.  *Tripati v.*

2  *Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988).[9]

3       Finally, the issue was necessary for the determination of the Wells Fargo Suit.  The

4  conclusion that the debt was not a consumer debt is an independent basis to deny the FDCPA

5  claim.  *Turner v. Cook*, 362 F.3d at 1228; *Bloom*, 972 F.2d at 1068.  Accordingly, Debtor is barred

6  from relitigating this issue in this action.

7       **3.    Defendants BONY and BANA Are Not Debt Collectors**

8       BONY is not a debt collector under the FDCPA.  In order to be a debt collector under the

9  FDCPA, the entity collecting the debt must be in the principal business of debt collection or

10 collect the debt on behalf of another entity.  15 U.S.C. § 1692a(6) ("'debt collector' means any

11 person who uses any instrumentality of interstate commerce or the mails in any business the

12 principal purpose of which is the collection of any debts, or who regularly collects or attempts to

13 collect, directly or indirectly, debts owed or due or asserted to be owed or due another").

14 Accordingly, "the FDCPA does not apply to creditors."  *Kerr v. Wanderer & Wanderer*, 211

15 F.R.D. 625, 629 (D. Nev. 2002).  This is true even if the party collecting the debt did not originate

16 the debt, but purchased it.  *Henson v. Santander Consumer USA Inc.,* 137 S. Ct. 1718, 1724 (2017)

17 ("a company collecting purchased defaulted debt for its own account—like Santander—would

18 hardly seem to be barred from qualifying as a creditor under the statute's plain terms"); *Schlegel v.*

19 *Wells Fargo Bank, NA*, 720 F.3d 1204, 1209 (9th Cir. 2013) ("the complaint's factual matter,

20 viewed in the light most favorable to the Schlegels, establishes only that debt collection is some

21 part of Wells Fargo's business, which is insufficient to state a claim under the FDCPA").

22 Accordingly, BONY, the party entitled to enforce the debt, is not a creditor under the FDCPA.

23       BANA is not a debt collector as the loan was current when it took over as servicer of the

24

25 [9] Further, Debtor has not challenged the ruling of this Court that that debt was not incurred for
   consumer purposes in her appellees brief.  UMF #48.  Accordingly, there is no risk of the Ninth
26 Circuit reversing this Court on this issue.  *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th
   Cir. 1986) ("The Court of Appeals will not ordinarily consider matters on appeal that are not
27 specifically and distinctly argued in appellant's opening brief").

28

1  loan.  Baroni defaulted on her loan in 2009, while BANA was servicing the loan. UMF #17, 24

2  "The FDCPA excludes from the definition of 'debt collector' any person who otherwise satisfies

3  the definition to the extent that the collection activity in question 'concerns a debt which was not

4  in default at the time it was obtained by such person.'"  *Magee v. AllianceOne, Ltd.*, 487 F. Supp.

5  2d 1024, 1027 (S.D. Ind. 2007); 15 U.S.C.§ 1692a(6)(F).  Accordingly, "the FDCPA does not

6  apply to, among others, mortgage servicing companies, or assignees of the mortgage debt, if the

7  debt was not in default at the time the debt was obtained."  *Klohs v. Wells Fargo Bank, N.A.*, 901

8  F. Supp. 2d 1253, 1258 (D. Haw. 2012) (collecting cases).

9      **4.**    **There Was No Prohibited Collection Activity**

10      Debtor's complaint alleges "Defendants attempted to collect on the Plaintiff's HELOC

11  under false pretenses, namely that the Defendants were assigned Plaintiff's debt when in fact they

12  were not."  TAC at ¶ 67.  Debtor also allege that "Defendants falsely represented the amount of

13  the debt under the HELOC, the Defendants failed to properly credit payments made, incorrectly

14  calculated interest on the account, and failed to accurately debit fees."  TAC at ¶ 72.

15      As this allegation is incredibly vague, and as Defendants cannot see any error in Debtor's

16  very vanilla account statements, Defendants' counsel questioned her as to this allegation at her

17  deposition.  Her response was that "the errors that I'm referring to are articulated in the

18  complaint."  Baroni Depo at 97:7-8, <u>Ex. A</u> to Kornberg Decl.  When questioned as to whether

19  these errors were accounting errors of any type, or simply a reassertion of her claim that

20  Defendants could not enforce the note, she responded as follows.

21          Well, the -- the spirit of the FDCPA claim is that your clients haven't
        disclosed to me to whom the debt is really owed. So all of these

22          paragraphs support that and -- I'm not sure what part you're not
        understanding about "failed to accurately debit fees." If fees aren't

23          owed to the noteholders, then  they've -- then -- and you've charged
        me for them, or your clients charged me, then that -- those are

24          inaccurate.

25  Baroni Depo at 98:9-17, <u>Ex. A</u> to Kornberg Decl.

26      This question was again also posed to Debtor in the form of an interrogatory requesting

27  that she "[s]tate all facts that you contend support your third claim for relief for violation of 15

28  U.S.C.§ 1692."  Debtor's response was that "Plaintiff's position is also set forth in paragraphs 64-

1    77 of Plaintiff's Third Amended Complaint. Further, The Bank of New York Mellon as Trustee

2    for Countrywide offerings together with Bank of America, and the certificates holders of CWHEQ

3    2005-D ("Countrywide RMBS Settlement") indicate an $8.5bil settlement has been entered into

4    which affects amounts owed to the certificate holders of CWHEQ 2005-D."  Debtor's Response to

5    Interrogatories at 11:7-20, Ex. K to Kornberg Decl.

6           Accordingly, it is clear that Debtor's theory of an accounting is error is only based on the

7    general proposition that she does not owe any debt to Defendants at large.  As set forth above, this

8    theory fails.

9           **5.    Debtor Has No Damages**

10          Debtor's complaint alleges the following damages for the alleged violation of the FDCPA.

11                     (1) multiple parties may seek to enforce the debt obligation against
                     her, (2) the title to her Property has been clouded and its salability
12                   has been rendered unmarketable, as any buyer of Plaintiff's Property
                     will find themselves in legal limbo, unable to know whether they
13                   can safely purchase Plaintiff's Property or get title insurance; (3)
                     Plaintiff has been paying the wrong party for an undetermined
14                   amount of time and overpaid in interest that was over calculated; (4)
                     Plaintiff is unable to determine whether her Chapter 11 Plan
15                   Payments will be sent to the proper party; (5) Plaintiff's credit score
                     has been damaged; and (6) Plaintiff has expended significant funds
16                   to cover the costs of attorneys' fees and related costs.

17   TAC at ¶ 77.  None of these are actionable under the FDCPA for the following reasons.

18          As to her first two claims for damages, for the risk of multiple parties seeking to enforce

19   the same debt and the clouding of tile, Debtor only seeks relief under the portion of the FDCPA

20   which prohibits misrepresentation of the "the character, amount, or legal status of any debt ... or

21   the threat to take action that cannot be legally taken."  TAC at ¶ 66.  Any damages caused by

22   multiple parties being able to enforce the debt or title to her property being clouded has nothing to

23   do with the representations of Defendants to Debtor.

24          As to her claim as to paying the wrong party, the statute of limitations under the FDCPA is

25   within one year from the date on which the violation occurs.  15 U.S.C. § 1692k(d).  Debtor thus

26   could only seek to recover any payments made within one year of her petition date - February 1,

27

28

1  2012.  As Debtor made her last payment on the loan on February 18, 2010, no payments could be

2  recovered.  UMF #24.[10]

3       As to her claim that she is damaged by the filing of Claim 4-2,  any claim under the

4  FDCPA relating to the filing of a proof of claim, or other act in a bankruptcy case, is precluded by

5  the bankruptcy code.  *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 511 (9th Cir. 2002)

6  ("Because Walls's remedy for violation of § 524 no matter how cast lies in the Bankruptcy Code,

7  her simultaneous FDCPA claim is precluded"); *see also Midland Funding, LLC v. Johnson*, 137 S.

8  Ct. 1407, 1415 (2017).

9       As to the claim that she was damaged by her credit score being decreased, Debtor has not

10  provided evidence of any credit reporting by any Defendants despite being requested to provide

11  such evidence in discovery.  Debtor's Response to Interrogatories at 11:7-20, Ex. K to Kornberg

12  Decl; Kornberg Decl. at ¶ 9.  This is fatal to this claim.  *Nissan Fire & Marine Ins. Co. v. Fritz*

13  *Companies, Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000) ("in order to carry its initial burden of

14  production by pointing to the absence of evidence to support the nonmoving party's claim or

15  defense, the moving party will have made reasonable efforts, using the normal tools of discovery,

16  to discover whether the nonmoving party has enough evidence to carry its burden of persuasion at

17  trial").

18       Finally, as to the claim for attorneys' fees, the FDCPA only allows attorneys' fees "in the

19  case of any successful action to enforce the foregoing liability."  15 U.S.C. § 1692k(a)(3). This

20  provision requires the plaintiff to be awarded some "liability for either actual or statutory

21  damages."  *Dechert v. Cadle Co.*, 441 F.3d 474, 475 (7th Cir. 2006); see also *Johnson v. Eaton*, 80

22  F.3d 148, 152 (5th Cir. 1996) ("the FDCPA requires that a plaintiff prove actual or additional

23  damages in order to receive attorney's fees and costs").   As Debtor has not shown any such

24  damages, she may not receive attorneys' fees.

25

26  _____

27  [10] Debtor cannot argue equitable tolling either, as she states she stopped making payment as she
   believed she was paying the wrong party.  UMF #24.

28

**E.      The Fourth Cause of Action for Violation of 12 U.S.C. § 2605 Fails as Defendants Properly Responded to the QWRs**

In this cause of action, Debtor alleges that "On November 29, 2010, November 30, 2010, December 3, 2010 and December 27, 2010, Plaintiff forwarded Defendants a QWR via facsimile and US Postal Service, for which Defendants acknowledged receipt of the QWRs." TAC at ¶ 80. Defendants responded to the QWRs. UMF #26, 27, 29; TAC at ¶ 81.

First, Debtor did not send any purported QWRs to either defendants BAC or BONY. UMF # 26, 27, 29. Had she done so, the QWRs would not be actionable as neither BAC nor BONY are nor were servicers of the HELOC. 11 U.S.C. § 2605(d). Accordingly, this cause of action fails as to BAC or BONY.

Debtor did send QWRs to BANA and Green Tree. UMF #25, 28. BANA and Green Tree timely responded. UMF #26, 27, 29. Debtor alleges that the responses to the QWRs were deficient as "Defendants did not provide the contact information for the holder of Plaintiff's HELOC." TAC at ¶ 81.

Defendants had no such duty. RESPA makes no requirement that the servicer provide contact information for the party seeking to enforce the note. Instead, RESPA simply requires that the servicer provide "the name and telephone number of an individual employed by, or the office or department of, the *servicer* who can provide assistance to the borrower." 12 U.S.C.§ 2605(d)(2) (emphasis added). This information was provided. UMF #26, 27, 29.

Debtor next alleges that the QWRs were not properly responded to as Defendants failed to make "appropriate corrections to Plaintiff's account including crediting of late charges and penalties" and to "to protect Plaintiff's credit rating upon receipt of Plaintiff's QWRs by furnishing adverse information regarding payment to credit reporting agencies." TAC at ¶ 83. However, none of Debtor's purported QWRs furnished any information that would provide a basis for such corrections, or even requested that such corrections be made. UMF #25, 28. The responsive letters accordingly concluded that no error was found. UMF #26, 27, 29. Further, as admitted by Debtor at her deposition, like her FDCPA claims, her RESPA "accounting" errors arose solely from her contention that Defendants lacked standing to enforce the HELOC. Baroni Deposition at

1   p.120:7-16, Ex. A to Kornberg Decl.; see also Debtor's Response to Interrogatories at p.11:24-

2   12:7.  As set forth above, this argument fails as all parties may enforce the loan.

3   **F.      The Fifth Cause of Action for Violation of Cal. Bus. & Prof. Code § 17200 et seq. as
           the Predicate Claims Fail**

4

5        Debtor's fifth cause of action alleges that the acts taken by Defendants which constituted

6   violations of Debtor's third (FDCPA) and fourth (RESPA) causes of action also constitute a

7   violation of Cal. Bus. & Prof. Code § 17200.  TAC at ¶ 88.  As stated above, Defendants are

8   entitled to summary judgment as to the fourth and fifth cause of action, and thus are entitled to

9   judgment on this cause of action also.

10  **G.      The Sixth Cause of Action for Accounting as There Is No Fiduciary Relationship or
           Complicated Accounting**

11

12       Debtor's sixth cause of action alleges that she is entitled to an accounting of her loan.

13  TAC at ¶ 104.  A cause of action for accounting "requires a showing of a relationship between the

14  plaintiff and the defendant, such a fiduciary relationship, that requires an accounting or a showing

15  that the accounts are so complicated they cannot be determined through an ordinary action at law."

16  *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1413 (2014).  "An action for accounting is not

17  available where the plaintiff alleges the right to recover a sum certain or a sum that can be made

18  certain by calculation."  *Id.*  Accordingly, a claim for accounting fails when it asserts claims for

19  misapplication of payments or other issues which are simply an element of a breach of contract or

20  related claim.  *Id.* at 1414 ("the overpayment will constitute an element of their damages").  As

21  stated by the Supreme Court

22               Consequently, in order to maintain such a suit on a cause of action
                 cognizable at law, as this one is, the plaintiff must be able to show
23               that the 'accounts between the parties' are of such a 'complicated
                 nature' that only a court of equity can satisfactorily unravel them.17
24               In view of the powers given to District Courts by Federal Rule of
                 Civil Procedure 53(b) to appoint masters to assist the jury in those
25               exceptional cases where the legal issues are too complicated for the
                 jury adequately to handle alone, the burden of such a showing is
26               considerably increased and it will indeed be a rare case in which it
                 can be met.

27

28  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962).

1    There can be no claim for an accounting here.  As stated above, Debtor does not contend

2  that there was any misapplication of payments so complex that she requires an accounting from

3  Defendants, but simply that Defendants were not ever entitled to any of the payments made by

4  Debtor.   Baroni Deposition at p.120:7-16, Ex. A to Kornberg Decl; see also Debtor's Response to

5  Interrogatories at p.11:24-12:7, Ex. K to Kornberg Decl..  Accordingly, Debtor is quite capable of

6  doing her own accounting based on her records of payments made.[11]

7  **H.**    **The Seventh Cause of Action for Violation of the Automatic Stay Fails as There Was
           No Willful Stay Violation and No Damages**

8

9    This cause of action alleges that all Defendants violated the automatic stay in a collection

10  suit brought against Debtor and her husband.  This is not the case, as to the extent there was a stay

11  violation, it was not willful as Defendants had no notice of the bankruptcy and cured the violation

12  upon learning of the bankruptcy.

13    **1.**    **Green Tree Is the Sole Party to the State Court Lawsuit**

14    In her complaint, Debtor alleges a stay violation against all Defendants for violation of the

15  automatic stay.  This purported stay violation arises solely out of a collection lawsuit that was

16  pending against her when she filed for bankruptcy.  TAC at ¶¶ 107-115.  As an initial matter, this

17  lawsuit was filed and prosecuted by Green Tree alone.  UMF #30.  Accordingly, even if Debtor's

18  allegations were true, no other party to this action violated the stay and no liability can be held

19  against them.

20    **2.**    **The Lawsuit Was Filed Before Debtor Filed for Bankruptcy**

21     Debtor first alleges that "[o]n February 28, 2012, with notice of the pending Case,

22  knowing of the automatic stay under 11 U.S.C. §362(a), Defendants caused a complaint to be filed

23  in Los Angeles Superior Court [], Van Nuys District, naming Allana Baroni and James Baroni as

24  Defendants."  TAC at ¶ 109.  This is incorrect.  On August 9, 2011, Green Tree, as servicer, and

25

26  _____

27  [11] Debtor also claims the accounting fails to include payments under the Financial Guarantee
   Insurance Policy.  As set forth in p. 13, above, any payments made under this policy would not
   inure to the benefit of Debtor.

28

1    through its counsel the Dreyfuss Firm, filed a complaint against Debtor and James Baroni in the

2    Los Angeles Superior Court to collect on the balance of the HELOC  UMF #30.  Debtor did not

3    file for bankruptcy until February 1, 2012.  UMF #31.  As the complaint predated the bankruptcy,

4    it was not filed in violation of the automatic stay.

5          **3.    Debtor Failed to Provide Notice of the Bankruptcy**

6          In order to receive damages for a violation of the automatic stay, the violation must be

7    willful.  11 U.S.C.A. § 362(k).  "A willful violation is satisfied if a party knew of the automatic

8    stay, and its actions in violation of the stay were intentional."  *Eskanos & Adler, P.C. v. Leetien*,

9    309 F.3d 1210, 1215 (9th Cir. 2002).

10         This was the case here.   Debtor's voluntary petition was a skeletal petition and none of

11   Defendants were included in the mailing list.  UMF #31.  Because Defendants were not listed in

12   the voluntary petition or the mailing matrix, they were not provided notice by through the BNC

13   notices created by the Court upon filing of the case.  UMF #32.  On February 29, 2012, Debtor

14   did, finally, file schedules listing Green Tree as a creditor and providing a master mailing list with

15   their address.  UMF #33.  However, the docket is bare of any evidence these schedules were

16   served.[12]

17         A party cannot willfully violate the stay if they are unaware of the bankruptcy itself.

18   *Copeland*, 441 B.R. at 364 ("Kandi did not willfully violate the stay by filing the counterclaim on

19   November 3, because as of that date she did not know about the state court action or the

20   bankruptcy").  Green Tree finally learned of Debtor's bankruptcy proceeding on March 29, 2012.

21   UMF # 35.  Accordingly, any action in the lawsuit by Green Tree up until March 29, 2012 that

22   violated the automatic stay was not willful.

23

24

25

26   [12] A 341(a) notice was created by the Court and served by BNC on March 8, 2012.  However, of
     Defendants, only BANA was served by the BNC notice.  UMF # 34.  However, at this time, Green
27   Tree, not BANA, was servicer of the loan.  UMF #18.

28

                                                    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 4.    Green Tree Had No Duty to Immediately Dismiss the Case, but Solely to Maintain the Status Quo

Debtor next alleges a stay violation in that "[o]n March 30, 2012, Defendants caused the Claim to be filed in the Case, but did not dismiss the LASC Case." TAC at ¶ 110.  Green Tree had no duty to do so.  "The stay requires the creditor to maintain the status quo ante and to remediate acts taken in ignorance of the stay." *In re Roberts*, 175 B.R. 339, 343 (B.A.P. 9th Cir. 1994).  As the lawsuit was already in place when Debtor filed for bankruptcy, Green Tree had no obligation to dismiss the suit so long as it maintained the status quo.  *See In re Fitch,* 217 B.R. 286, 291 (Bankr. S.D. Cal. 1998) (automatic stay did not impose duty on creditor to return automobile it repossessed pre-petition); *In re Peters*, 101 F.3d 618, 620 (9th Cir. 1996) (postponement of foreclosure sale did not violate stay when sale was noticed pre-petition).

On or around March 29, 2016, Green Tree learned of the Chapter 13 bankruptcy filing. UMF #35.   Green Tree then filed a notice of stay of proceedings in the Superior Court.  UMF #38.  When it was clear that maintaining the suit would be fruitless as the bankruptcy would proceed, Green Tree dismissed the entire action as to both parties.  UMF #40.

As Green Tree took action to maintain the status quo in the state court proceeding by filing the notice of stay, and then later dismissing the case, it did not violate the stay when it learned of the bankruptcy

### 5.    There Was No Violation of the Codebtor Stay

Finally, Debtor alleges that Green Tree violated the codebtor stay of 11 U.S.C. § 1301(a) when it sought entry of a default judgment against James Baroni.  TAC at ¶¶ 111-112.  Even assuming Debtor has standing to enforce the codebtor stay, this is not the case.

It is true that when Debtor filed the case, a codebtor as to James Baroni stay arose under 11 U.S.C. § 1301(a).  However, Debtor's case converted to Chapter 11 on February 29, 2012.  UMF #31.  Upon conversion, the codebtor stay lifted by operation of law.  11 U.S.C. § 1301(a)(2).  As the request of entry of default as to James Baroni was filed on May 1, 2012, after conversion of the case, there was no violation of the codebtor stay.   UMF #39.

23

### 6. Debtor Was Not Damaged

Finally, Debtor has no damages. A willful violation of the automatic stay, by itself, is not enough to warrant an award of damages. *In re McHenry*, 179 B.R. 165, 168 (B.A.P. 9th Cir. 1995) ("certain section 362 stay violations are technical in nature and need no punishment to deter further violations"); *In re Wagner*, 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987) ("[n]o damages will be awarded as a result of the violation of the automatic stay which took place on September 16, 1986 as there was no evidence that the debtor suffered any harm").

Here, Debtor's sole claim for damages is the alleged legal fees she incurred in correcting the stay violation. Supplemental Response to Discovery at p.3, <u>Ex. M</u> to Kornberg Decl. However, Debtor did not actually incur any legal fees in remedying the stay violation. Debtor did not file any motions or other actions in either bankruptcy or state court regarding the stay until she filed this suit in 2013. UMF #41. Debtor made no letters, calls, or other communications from its counsel regarding the alleged violation of the stay. UMF #41.

Further, the billing entries provided by Debtor's counsel show that her attorney took no acts to "remedy" the stay violation. UMF #41. While the billing records show a smattering of vaguely titled statements such as "continue legal research," it is entirely unclear what counsel was researching. Billing Records of Michael S. Riley, <u>Ex. N</u> to Kornberg Decl. Even if some of this legal research related to the alleged stay violation, legal research, by itself, cannot cure a stay violation. Counsel cannot receive attorneys' fees for requesting her attorneys ponder an issue.

### I. The Eighth Cause of Action for Violation of California Civil Code §§ 1709, 1710 Fails as She Has Not Alleged Any Fraudulent Activity

Debtor's final cause of action is for fraud. Debtor simply wraps up all her prior actions and allegations and alleges that each one is also a predicate for fraud. TAC at ¶ 117. Accordingly, as summary judgment is appropriate on each prior cause of action, judgment should be entered in favor of Defendants as to this cause of action.

Summary judgment should also be granted on the alternative ground that Debtor did not justifiable rely on any statement. In order to recover on fraud, a party must show they justifiably relied on the misrepresentation. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003).

1   "[T]he focus of the inquiry is whether the party seeking rescission was deceived in fact by the

2   misrepresentation which the other party made knowingly and with the intention that it be relied

3   upon." *Pac. Maxon, Inc. v. Wilson*, 96 Nev. 867, 870, 619 P.2d 816, 818 (1980); *see also*

4   *Anderson v. Deloitte & Touche,* 56 Cal. App. 4th 1468, 1479 (1997).  Debtor testified that she

5   stopped making payments on her loan in 2009 because she no longer believed that Defendants did

6   not have the right to enforce the loan.  UMF #24.  All of the communications included in Debtor's

7   complaint, either by allegation or directly, were made in 2010 or later.  See TAC at ¶¶ 24-30.

8   Accordingly, there can be no justifiable reliance here.

9        Summary judgment should also be granted as to the predicate claims on these alternative

10  grounds, as follows.

11       Debtor alleges that Defendants committed fraud when they filed a claim representing that

12  $135,395.60 was owed by Debtor.  TAC at ¶ 117(b).  This claim is preempted as the Bankruptcy

13  Code provides the exclusive remedy for resolving challenges to proofs of claims.  *MSR Expl., Ltd.*

14  *v. Meridian Oil, Inc.*, 74 F.3d 910, 916 (9th Cir. 1996); *In re Chaussee*, 399 B.R. 225, 234 (B.A.P.

15  9th Cir. 2008).

16       Debtor alleges "Defendants represented to Plaintiff that the Financial Guaranty Policy

17  described herein did not make payments as a result of the Loan."  TAC at ¶ 117(c).  Again, despite

18  conducting proper discovery on the issue, Defendants have yet to see any evidence that *any*

19  *representation at all* was made by them on this issue.

20       Debtor alleges that "Defendants violated the Automatic Stay by filing the LASC

21  Complaint asserting CHL."  TAC at ¶ 117(g).  It is entirely unclear how this constitutes a

22  misrepresentation, nonetheless an actionable one.

23                              **IV.  CONCLUSION**

24       For the reasons stated above, the Court should grant summary judgment as to each cause of

25  action in favor of Defendants and against Debtor.

26

27

28

1   DATED:  August 11, 2017                    SEVERSON & WERSON
                                               A Professional Corporation
2

3

4                                              By:      /s/ Bernard J. Kornberg
                                                         Bernard J. Kornberg
5
                                               Attorneys for Green Tree Servicing LLC Now Known
6                                              As Ditech Financial LLC, Bank of America, N.A., Bank
                                               of America Corporation, and The Bank of New York
7                                              Mellon f/k/a The Bank of New York as successor
                                               Indenture trustee to JPMorgan Chase Bank, National
8                                              Association for CWHEQ Revolving Home Equity Loan
                                               Trust, Series 2005-D
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28